No. 90-531

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

STATE OF MONTANA,

      Plaintiff and Respondent,

  v.

DEWEY E. COLEMAN,

      Defendant and Appellant.



APPEAL FROM:  District Court of the Sixteenth Judicial District,
In and for the County of Rosebud,
The Honorable Joe Hegel, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

      Charles F. Moses; Moses Law Firm, Billings, Montana

      For Respondent:

      Hon. Marc Racicot, Attorney General, Helena, Montana
Patricia J. Jordan, Assistant Attorney General,
Helena, Montana
John Forsythe, Rosebud County Attorney, Forsyth,
Montana

Submitted: April 25, 1991

Decided: June 25, 1991

Filed:

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Dewey Eugene Coleman (Coleman) appeals the resentencing for his aggravated kidnapping conviction by the District Court of the Sixteenth Judicial District, Rosebud County. The District Court resentenced Coleman to 100 years imprisonment for this conviction following remand by an opinion of the Ninth Circuit Court of Appeals, which vacated Coleman's prior death penalty sentence on due process grounds. Coleman v. McCormick (9th Cir. 1989), 874 F.2d 1280, 1289-90, cert. denied, 110 S.Ct. 349 (1989). We affirm the District Court's resentencing.

Coleman presents the following issues:

1. Whether the consecutive sentence of 100 years for kidnapping violates the double jeopardy provisions of the United States and Montana Constitutions?

2. Whether Coleman was denied equal protection of the laws upon the grounds that he was: (a) unequally treated during the course of these proceedings; and (b) was unequally treated by reason of the fact that he was discriminated against as a black man?

The facts in this case are set forth in State v. Coleman (1978), 177 Mont. 1, 8-13, 579 P.2d 732, 738-40 (Coleman I). We will therefore not repeat those facts here. We will, however, give a procedural history of this case, which spans over sixteen years.

On October 24, 1974, Coleman, along with his roommate Robert Nank, was charged by information with the crimes of deliberate

2

homicide, sexual intercourse without consent, and aggravated kidnapping in connection with the death of Peggy Lee Harstad on or about July 4, 1974. Nank, a white man, entered a written plea agreement with the State on May 7, 1975, wherein he pled guilty to deliberate homicide and solicitation to commit sexual intercourse without consent in exchange for the dismissal of the aggravated kidnapping charge. Nank also agreed to testify against Coleman. Nank is currently imprisoned in an out-of-state prison.

Coleman, a black man, presented to the District Court on May 23, 1975, a written offer of a conditional plea of guilty in exchange for the dismissal of the aggravated kidnapping charge. In his offer, Coleman insisted on maintaining his innocence. The State refused to accept his conditional plea of guilty.

Coleman went to trial on October 23, 1975. On November 14, 1975, a jury convicted Coleman of deliberate homicide under § 94-5-102, R.C.M. (1947) (now § 45-5-102, MCA); sexual intercourse without consent under § 94-5-503, R.C.M. (1947) (now § 45-5-503, MCA); and aggravated kidnapping under § 94-5-303, R.C.M. (1947) (now § 45-5-303, MCA). On November 21, 1975, the District Court sentenced Coleman to 100 years imprisonment for the deliberate homicide conviction and forty years imprisonment for the sexual intercourse without consent conviction. The District Court sentenced Coleman to death for the aggravated kidnapping conviction under a then-existing mandatory death penalty statute, § 94-5-304, R.C.M. (1947).

3

On appeal, this Court affirmed Coleman's convictions and his sentence for deliberate homicide, but vacated and remanded to the District Court his sentences for sexual intercourse without consent and aggravated kidnapping. Coleman I, 579 P.2d at 753. In vacating Coleman's sentence for aggravated kidnapping, this Court held that § 94-5-304, R.C.M. (1947), was unconstitutional. Coleman I, 579 P.2d at 742. The 1977 Montana Legislature later repealed that statute.

On remand in 1978, the District Court resentenced Coleman to twenty years imprisonment for the conviction of sexual intercourse without consent. The District Court resentenced Coleman to death for aggravated kidnapping under §§ 95-2206.6 to 95-2206.15, R.C.M. (1947) (now §§ 46-18-301 to 46-18-310, MCA), new death penalty statutes enacted by the 1977 Montana Legislature. On automatic review, this Court affirmed Coleman's convictions and sentences. State v. Coleman (1979), 185 Mont. 299, 336, 605 P.2d 1000, 1022 (Coleman II), cert. denied, 446 U.S. 970 (1980).

In 1980, Coleman sought and was refused review of his sentence by the Sentence Review Division of this Court. Additionally, this Court denied Coleman's petition for a writ of supervisory control in an order dated March 21, 1980. Coleman's petition for a writ of supervisory control, before the United States Supreme Court, was also denied. Coleman v. Sentence Review Div. of the Supreme Court of Montana, cert. denied, 449 U.S. 893 (1980).

In 1980, Coleman filed a petition and later an amended petition with the District Court for post-conviction relief. The District Court denied Coleman's amended petition on February 18, 1981. On review, this Court once again affirmed his convictions and sentences. Coleman v. State (Mont. 1981), 633 P.2d 624, 633 (Coleman III), cert. denied, 455 U.S. 983 (1982).

Thereafter, Coleman filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 with the United States District Court for the District of Montana, Billings Division (United States District Court). This proceeding was temporarily stayed to allow Coleman the opportunity to exhaust his state remedies when Coleman's new counsel discovered that Coleman's prior counsel told the trial court judge, who had presided at the pretrial hearing and later twice sentenced Coleman to death, that Coleman had admitted to the crimes following the administration of sodium amytal, a truth-inducing drug that on occasion produces questionable results. Following review, this Court once again affirmed Coleman's convictions and sentences holding that there was no evidence in the record suggesting that prior counsel's statements affected sentencing. Coleman v. Risley (1983), 203 Mont. 237, 250, 663 P.2d 1154, 1161 (Coleman IV).

Thereafter, Coleman moved the United States District Court for 1) an evidentiary hearing on twelve of thirty-seven issues in his habeas corpus petition, and 2) summary judgment on the remaining issues. The State also moved the court for summary judgment. The

5

court denied Coleman's request for an evidentiary hearing, denied Coleman summary judgment, and granted the State summary judgment in a memorandum opinion and order dated August 8, 1985.

On May 5, 1989, on review of the denial of the petition for writ of habeas corpus, the Ninth Circuit Court of Appeals (Ninth Circuit) vacated Coleman's death penalty sentence on due process grounds. Coleman v. McCormick (9th Cir. 1989), 874 F.2d 1280, 1289-90, cert. denied, 110 S.Ct. 349 (1989). The Ninth Circuit did not overturn the aggravated kidnapping conviction but remanded this case for the State to either pursue a new trial or resentence Coleman on the aggravated kidnapping conviction. Coleman v. McCormick, 874 F.2d at 1290, n.9. The State opted for resentencing Coleman on the aggravated kidnapping conviction.

On August 13, 1990, following an oral argument on July 13, 1990, and a resentencing hearing on July 31, 1990, the District Court resentenced Coleman to 100 years imprisonment for the aggravated kidnapping conviction, this sentence to run consecutively to the sentences of 100 years imprisonment for his deliberate homicide conviction and twenty years imprisonment for his sexual intercourse without consent conviction. From this resentencing, Coleman appeals.

We restate the first issue as follows:

1. Does the sentence of 100 years for the aggravated kidnapping conviction, which was imposed consecutively to sentences for convictions of deliberate homicide and sexual intercourse

6

without consent, violate the double jeopardy provisions of the United States and Montana Constitutions?

Coleman argues that the double jeopardy clauses of the Montana and United States Constitutions, as well as §§ 46-11-501 to -505, MCA, statutes concerning lesser included offenses, bar his resentencing on his aggravated kidnapping conviction. The State argues that the doctrine of res judicata applies to this issue as this Court has already determined this issue in the State's favor in Coleman II, 605 P.2d at 1008-10 (citing, inter alia, Block-burger v. United States (1932), 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306). We agree with the State.

The doctrine of res judicata bars reconsideration of an issue if four elements are present:

> (1) the parties or their privies must be the same; (2) the subject-matter of the action must be the same; (3) the issues must be the same, and must relate to the same subject-matter; and (4) the capacities of the persons must be the same in reference to the subject-matter and to the issues between them.

Brannon v. Lewis and Clark County (1963), 143 Mont. 200, 207-08, 387 P.2d 706, 711 (cited in Coleman III, 633 P.2d at 630). Here, all four of these elements are indeed present. Furthermore, Coleman presents no new facts or applicable case law to substantiate this argument. We hold that based on res judicata, we will not reconsider this issue.

Additionally, we wish to note that the United States District Court also examined the issue of double jeopardy, along with

7

thirty-six other issues, in Coleman's habeas corpus petition. After examining these issues, the court denied Coleman's petition for habeas corpus, denied Coleman's motion for summary judgment, and granted the State's motion for summary judgment in a memorandum opinion and order dated August 8, 1985.

We restate the second issue as follows:

2.     Does the sentence of 100 years for the aggravated kidnapping conviction deny Coleman his right to equal protection of the laws?

Coleman argues that his sentence resulted from racial discrimination and unequal treatment because over sixteen years ago, the State and the District Court refused his conditional guilty plea yet accepted Nank's pleas of guilty. The State and the District Court, however, were not bound to accept Coleman's conditional plea of guilty; the acceptance of a plea is within the discretion of the trial court. Coleman I, 579 P.2d at 744-45 (citations omitted). Coleman further argues that he has been denied an evidentiary hearing on this issue. The State, however, correctly points out that Coleman has failed to produce any witnesses to support his assertion in the many years of litigating this case. In particular this includes the present sentencing hearing before a new district court judge who specifically invited counsel for Coleman to submit all evidence and testimony which he thought to be essential. After review of such evidence as was

8

submitted, which had little bearing on the present issue, and after a detailed review of the record, only then did the new district court judge enter his sentence.

This Court has twice discussed and rejected Coleman's racial discrimination and unequal treatment claim in Coleman I, 579 P.2d at 744-45, and Coleman II, 605 P.2d at 1018-19. In Coleman III, 633 P.2d at 631, this Court dismissed Coleman's racial discrimination claim, then labeled as "Claim B", based on res judicata. Coleman presents no new facts or applicable case law in this appeal not already considered in the lengthy records relating to Coleman's convictions and sentences. We hold that res judicata applies and decline to reconsider this issue.

We find it noteworthy that the United States District Court, in its August 8, 1985 memorandum opinion and order, also found no merit in Coleman's claim of racial discrimination and unequal treatment, and rejected it as "idle speculation unsubstantiated by any facts."

Although the Ninth Circuit did not reach this racial discrimination and unequal treatment issue, Judge Trott recognized that this claim lacks merit:

> It is useful to put this case in context to remember that Coleman at one point tried to plead guilty while simultaneously proclaiming he was the innocent victim of racial bias. Then, after the administration of "truth serum," a drug known on occasion to produce unreliable results, his attorney abruptly indicated Coleman was prepared to admit to his part in the kidnap, rape, and murder. With

9

this series of events in mind, it is not appropriate to reject summarily a state prosecutor's explanation for his reluctance to accept a plea of guilty from a man who first said he was innocent, then in an abrupt, about-face apparently said he was guilty (after being given sodium amytal), and finally went to trial on the theory that he was blameless. Many respected trial judges might well have declined to accept such a plea because of its obvious defects.

Had Montana accepted either of Coleman's pleas, it is clear beyond cavil that Coleman would have eventually mounted a collateral attack against his conviction, claiming an innocent black man under the influence of drugs had been coerced into pleading guilty and sent to jail for life for a crime he did not commit. Had he been successful in invalidating such a plea, Montana would have had to try Coleman years later with evidence that might have deteriorated beyond resurrection. Had Nank died or escaped in the interim, Montana's case might have been nonexistent, and Coleman might have escaped trial altogether. This would have been unacceptable. It is therefore not beyond understanding that the State refused to plea bargain and opted instead to go to trial.

Montana was under no obligation to plea bargain at all. See Weatherford v. Bursey, 429 U.S. 545, 561, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977). Also a plea tendered pursuant to North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) will not stand--nor should it--without a strong factual basis and a clear showing that it was the product of a free will. Montana's Hobson's choice under these difficult circumstances to put its case before a jury, therefore, is hardly conclusive grounds for castigation. As the Supreme Court noted in Singer v. United States, 380 U.S. 24, 36, 85 S.Ct. 783, 790, 13 L.Ed.2d 630, 638 (1965), our Constitution regards a trial by jury as the best way to produce a fair result. The cruel and savage facts in this case also make it evident that

> Montana's selection of capital punishment
> falls short of shocking a reasonable person's
> conscience. See Burger v. Kemp, 483 U.S. 776,
> 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987).

Coleman v. McCormick (9th Cir. 1989), 874 F.2d 1280, 1297-98 (Trott, J., joined by Thompson, J., concurring), cert. denied, 110 S.Ct. 349 (1989).

Lastly, we note that Coleman invites us to discuss the remaining issues left unresolved by the Ninth Circuit in Coleman v. McCormick, supra. We find it unnecessary to address these issues and therefore decline his invitation. In conclusion, we affirm the District Court's findings of fact, conclusions of law and order of sentence dated August 13, 1990.

_____
Chief Justice

We concur:

_____

_____

_____

_____

_____

_____
Justices

11