No. 90-623

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

STATE OF MONTANA,

        Plaintiff and Respondent,

-vs-

FRANKLIN F. McKNIGHT,

        Defendant and Appellant.

FILED

NOV 14 1991

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Mineral,
The Honorable Jack L. Green, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

    J. Dirk Beccari, Missoula, Montana

    For Respondent:

    Hon. Marc Racicot, Attorney General; Elizabeth L.
Griffing, Assistant, Helena, Montana
M. Shaun Donovan, County Attorney, Superior, Montana

Submitted on Briefs: July 25, 1991

Decided: November 14, 1991

Filed:

_____
Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

Defendant was found guilty of sexual intercourse without consent after a jury trial in the District Court for the Fourth Judicial District, Mineral County. Defendant appeals. We affirm.

The issues for our consideration are:

1.    Did the District Court abuse its discretion by allowing evidence of prior sexual assaults?

2.    Did the District Court err by denying defendant's motion for mistrial?

On December 20, 1989, Franklin "Nick" McKnight, defendant, was charged with three counts of sexual intercourse without consent, two perpetrated against S.W. in 1981 and one against K.O. in 1984; and three counts of sexual assault, two perpetrated against S.W. in 1981 and one against S.B. in 1981. On February 6, 1990, the information was amended to include a count of sexual assault perpetrated against L.W. in 1981.

At the omnibus hearing, defendant moved to dismiss the charges as being barred by the statute of limitations. The State responded and concurred with defendant's motion. All charges except for the count of sexual intercourse without consent against K.O. in 1984 were dismissed as barred by the statute of limitations.

The State filed a _Just_ notice of intent to introduce evidence of the charges dismissed as barred by the statute of limitations, citing State v. Tecca (1986), 220 Mont. 168, 714 P.2d 136, as authority. It sought to introduce the evidence "for the purpose of supporting the State's proof on the issue of defendant's intent and

2

state of mind and consistent with the proposition that the defendant's acts were consistent with a common scheme, plan or system, as permitted by Rule 404(b)".

Defendant maintained that the admission of testimony of the alleged victims of the dismissed charges would prejudice the defendant since they were untried, unproven allegations. He also argued that the other evidence was too remote in time to satisfy the Just rule.

After a hearing, the District Court allowed the State to introduce evidence of the other acts under the Just rule. The dismissed counts of sexual intercourse without consent were not introduced at trial.

Defendant is the great-uncle of K.O. In 1984, nine-year old K.O. was visiting Montana with her family. Defendant's step-granddaughter, S.B., was one of K.O.'s friends. One day in the summer of 1984, S.B. and K.O. were playing in the area of defendant's house because S.B.'s father was staying in a trailer parked on the defendant's property. While the girls had planned on spending the night together, S.B.'s father picked her up and K.O. was left at defendant's house. K.O. testified that on that evening while she was lying on the couch in the defendant's living room and after Mrs. McKnight had gone to bed, defendant sat down on the couch next to K.O. She testified he put his hand under her shirt, and rubbed her chest. She testified he then started rubbing her genital area, and "actually put his fingers inside me." When K.O. asked him what he was doing defendant told her that he was giving

3

her a massage and not to tell anyone.

After this incident, K.O. began having severe stomach aches. She became withdrawn, especially from older men, and was afraid to go places alone or to be left alone. She testified she did not want to be near defendant. She also testified she did not trust people anymore. When K.O.'s family moved from California to Montana in 1988, defendant came to California to help them move and K.O. refused to ride alone with him.

Lindsay Clodfelter, a mental health therapist, and member of the Montana Sex Offender Treatment Association, testified that child victims often will tell of earlier experiences involving sexual abuse only when they become adolescents. She testified that "most children don't tell right away because by keeping it a secret, they protect themselves and they protect their family. The closer the kid is to the offender, the less likely the kid is to report." If they tell once they emerge into adolescence it is because "that's a time when they are -- they're branching out further and further from their family." She testified that she interviewed K.O. and then gave her expert opinion that K.O. had been sexually assaulted by someone.

S.B. testified that in the summer of 1981 she and a friend, S.W., were playing around defendant's house. Both girls were eight years old in 1981. Defendant asked them if they wanted to see his old car. When they went into the garage, defendant picked up S.B. and set her on a ledge. He rubbed S.B. on her chest and genital area. He then assaulted S.W., putting his hands in her shirt and

4

down her pants. S.W. also stated that "he stuck his hand inside of me and moved it around". S.B. testified she saw the assault on S.W. She then walked around behind the vehicle so that she would not have to watch "the rest of it". S.B. testified defendant threatened to kill them if they told anyone what had happened. A similar assault happened to S.B. again that summer, while she was sitting on defendant's couch under a blanket. S.B. testified defendant sat down beside her on the couch, covered them both with the blanket, stuck his hand under her shirt, and rubbed her chest and back. She further testified that defendant said "nobody would believe me if I told, and he'd kill me".

S.W.'s twin sister, L.W., testified that she was molested by defendant in 1981 when she was eight years old. She had been playing with S.B. in the trailer on defendant's property. L.W. testified that after S.B. left to go get something, defendant threw L.W. on the mattress, grabbed her chest and then stuck his hand down her pants. She asked him what he was doing and defendant said that he was just playing with her. L.W. became mad, kicked him in the groin, and ran from the trailer. He threatened to kill L.W. if she told anyone. L.W. further testified that defendant said if she ever told "he would make it look like we wanted it".

After a jury trial, defendant, 76 years old at the time, was found guilty of sexual intercourse without consent and sentenced to 20 years in the Montana State Prison with 10 years suspended. The District Court further ordered that defendant would not be eligible for parole until he successfully completed the sex offender

5

treatment program at the prison.   Defendant appeals.

I

Did the District Court abuse its discretion by allowing evidence of prior sexual assaults?

Defendant maintains the District Court erred in allowing S.B., L.W. and S.W. to testify about unproven allegations of sexual acts committed by defendant against them because the evidence did not meet the standards of Rule 404(b), M.R.Evid., and State v. Just (1979), 184 Mont. 262, 602 P.2d 957.  Defendant maintains that the "other acts" were not sufficiently similar to the charged offense because the other acts were alleged sexual assaults while the crime defendant was convicted of here was sexual intercourse without consent.  Defendant also argues that the other acts were too remote in time to be admissible as evidence, and that they did not tend to show common scheme, plan system or motive.  The State maintains the evidence met the Just test and was properly admitted into evidence.

Recently, in 1991 this Court adopted the Modified Just Rule in State v. Matt (Mont. 1991), ___ P.2d ___, 48 St.Rep.614.

The Modified Just Rule sets forth the basis for the admission of evidence of other crimes, wrongs or acts:

(1)  The other crimes, wrongs or acts must be similar.

(2)  The other crimes, wrongs or acts must not be remote in time.

(3)  The evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity with such character; but may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

6

> (4) Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading of the jury, considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

State v. Matt, 48 St.Rep. at 616. The Matt Court also applied the procedural protections as part of the Modified Just Rule. Those procedural protections are:

> (1) Evidence of other crimes, wrongs or acts may not be received unless there has been written notice to the defendant that such evidence is to be introduced. The notice to the defendant shall specify the evidence of other crimes, wrongs or acts to be admitted, and the specific Rule 404(b) purpose or purposes for which it is to be admitted.

> (2) At the time of the introduction of such evidence, the trial court shall explain to the jury the purpose of such evidence and shall admonish it to weigh the evidence only for such purposes.

> (3) In its final charge, the court shall instruct the jury in unequivocal terms that such evidence was received only for the limited purposes earlier stated and that the defendant is not being tried and may not be convicted for any offense except that charged, warning them that to convict for other offenses may result in unjust double punishment.

State v. Matt, 48 St.Rep. at 616.

### Similarity of Other Crimes, Wrongs or Acts

Defendant maintains that evidence of unproven sexual assaults perpetrated against other victims than the victim of the crime charged is inadmissible. His argument is twofold. First, he maintains that the victims are not the same and neither is their relationship to the defendant, so therefore, the similarity requirement is not met. Secondly, he maintains that the crimes of sexual assault and sexual intercourse without consent are not sufficiently similar.

7

The State maintains the other evidence is sufficiently similar because the charged offense and each one of the other crimes involved sexual contact between the defendant and a young girl who was eight or nine years old; each assault occurred on defendant's property; defendant's actions during each assault and the charged offense were basically the same; and defendant's threats toward each of the girls were essentially the same.

As the State points out, defendant's actions toward K.O. were similar to the actions against S.B., L.W. and S.W. In all cases, defendant rubbed the girls breasts and genital area. With S.W. and K.O. defendant went one step further and inserted his fingers into their vaginas, and thus, the charge of sexual intercourse without consent. The assaults on all girls happened when they were eight or nine years old; each assault occurred on defendant's property; and defendant threatened all the girls in essentially the same way. See State v. Tecca, 714 P.2d 136. As stated above, defendant's actions towards S.B., L.W. and S.W., as well as the charged actions toward K.O. were clearly similar. We conclude that the similarity of the other crimes, wrongs or acts test has been met.

### Nearness in Time

Defendant contends that the 1981 assaults against S.W., L.W. and S.B. are too remote in time to be admissible since those alleged assaults took place about three years earlier than the crime charged and nothing occurred in the interim. The State maintains that the remoteness question is directed to the discretion of the district court. It argues that here, the three

8

year period of time was not so remote as to supersede the discretion of the District Court.

Here the assaults on S.W., S.B. and L.W. occurred in 1981; three years prior to the 1984 crime against K.O. For a comparison of time periods, see Just 602 P.2d at 961 (three years); State v. Stroud (1984), 210 Mont. 58, 71, 683 P.2d 459, 466 (three and one-half years); State v. Eiler (1988), 234 Mont. 38, 48, 762 P.2d 210, 216-17 (five years); and Tecca, 220 Mont. 168, 170, 714 P.2d 136, 139 (nine years). In addition to the three year time span in the present case, we have considered the similarity in conduct when comparing the assaults on S.W., S.B. and L.W. to the assault against K.O., which demonstrates a pattern of similar conduct which may be properly considered on the issue of remoteness. See Tecca, 220 Mont. 172, 714 P.2d 139. We conclude the evidence was not too remote in time.

Proof of Notice, Opportunity, Intent, Preparation, Plan, Knowledge, Identity, or Absence of Mistake or Accident

Defendant contends that this element is not satisfied because the alleged crimes were perpetrated against different victims. He further argues that mere repetition of an act does not constitute a common scheme, plan or system. The State maintains that the actions of the defendant were sufficiently similar to constitute a common scheme, plan or system.

We note that this element has recently been modified in Matt and that the admission of evidence is not limited only to common scheme, plan or system. The Matt case recognized the inconsistencies in our previous holdings regarding other crimes

9

evidence. In modifying the _Just_ Rule, the _Matt_ Court explained:

> While the Just Rule was entirely appropriate to the factual situation in that case, it has led to contradictory results. The third element of the Just Rule provides that evidence may be admissible for the purpose of showing a common scheme, plan or system. We agree with that conclusion in that case. However, we emphasize that Rule 404(b) is not limited only to common scheme, plan or system. Rule 404(b) provides that evidence may be admissible for other purposes, _such as_ proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Clearly Rule 404(b) provides for the admission of evidence for many purposes other than the common scheme, plan or system stated in _Just_. We point out that the "common scheme, plan or system" referred to in _Just_ is listed as "plan" under Rule 404(b), according to McCormick on Evidence, 3rd Ed., §190, pp. 558-564 (1984); 22 C. Wright and K. Graham, Federal Practice and Procedure, Evidence, § 5244, p. 499 (1978); and 23 CJS Criminal Law §830 (1989).

_Matt_, 48 St.Rep. at 615. We conclude that under the Modified Just Rule, the other crimes, wrongs or acts evidence here tended to prove defendant's motive and intent.

### Probative Value Outweighs the Prejudicial Effect

Defendant maintains that the other acts evidence introduced amounted to unproven, untried allegations against different victims, and that such evidence was highly prejudicial to him. The State maintains that the probative value of the prior crimes evidence is established by the satisfaction of the first three elements of the _Just_ Rule.

We first point out that the parties agree that the procedural precautions were taken in this case. The defendant received proper notice; the trial court admonished the jury at the introduction of the evidence; and the trial court instructed the jury in its final charge on the purpose of the evidence. Thus the only question then

10

is whether the probative value of the evidence was outweighed by unfair prejudice. This Court recently addressed this question at length in State v. Paulson, No. 90-163, slip op. (Mont. 1991), citing and adopting 10 James Wm. Moore, Moore's Federal Practice § 403.10:

> To guide courts in balancing the "probative value" and the "unfair prejudice" of evidence, the Committee states that the latter term means evidence which has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Application of this thought and the ultimate determination of admissibility are matters left to the discretion of the trial court and will necessarily be decided on a case by case basis. However, by restricting the rule to evidence which will cause **"unfair** prejudice" the draftsmen meant to caution courts that mere prejudicial effect is not a sufficient reason to refuse admission. Probative evidence will frequently be prejudicial to a party, but that does not mean that it will cause the fact finder to ground a decision on an emotional basis. Thus, evidence which tends to horrify, evoke sympathy or increase a desire to punish due to a prior act of a party and whose probative value is slight may be properly excluded. (Emphasis supplied.)

Paulson, slip.op. at 13.

In the present case, the testimony of S.W., L.W. and S.B. was clearly prejudicial, but because it meets other aspects of the Modified Just Rule, such prejudice alone is not a sufficient reason to refuse admission. Paulson, slip op. at 14. The jury was properly instructed and admonished regarding the testimony on the other acts. The evidence presented established without question the similarity in assaults perpetrated against all the victims. Defendant's conduct was similar; the age of the girls at the time the crimes were committed was about the same; all the acts took place on defendant's property; and defendant's threats to all the

11

girls were similar. We conclude that the probative value of the evidence in question outweighed any prejudicial effect of admitting it.

We conclude that the four elements of the Modified Just Rule have been met. We hold that the District Court did not abuse its discretion by allowing evidence of prior sexual assaults.

II

Did the District Court err by denying defendant's motion for mistrial?

At trial, the last witness to testify was Dawn Terrill, S.W.'s teacher. The State prosecutor asked the teacher what she had been told by S.W. and the teacher responded:

> Q. What exactly did she tell you about the details of the assault against her?
>
> A. The first time that I met with [S.W.] she didn't tell me, but the third time she came into my room to talk to me she told me she had been sexually assaulted as a child.
>
> Q. Did she tell you what exactly happened?
>
> A. She told me that everything happened, and "everything" was her word.

The defendant moved for a mistrial on the basis of Dawn Terrill's use of the word "everything". The District Court denied the motion. On appeal, defendant argues it was error for the District Court not to declare a mistrial. He maintains that the word "everything" as used, implied to the jury that the defendant had penis-in-vagina sex. He argues that he was severly prejudiced by that statement because the jury would be totally disgusted with the thought of an old man copulating with a little child. The State

12

argues that "everything" has such a vague meaning. It argues that the teacher's reference to "everything" could easily be construed to include exactly what S.W. testified to at trial -- that defendant put his hands in her shirt and down her pants, rubbed her chest and put his finger inside of her.

This Court set forth the standard for declaring a mistrial in State v. Clawson (1989), 239 Mont. 413, 423, 781 P.2d 267, 273-74.

> There must be a manifest necessity to declare a mistrial and the defendant must have been deprived of a fair and impartial trial. State v. Brush (1987), 228 Mont. 247, 741 P.2d 1333, 1336. 44 St.Rep. 1495, 1499.
>
> The test for declaring a mistrial was stated by the United States Supreme Court in United States v. Perez. . . . The law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject . . . The power ought to be used with the greatest caution, under urgent circumstances, and for very plan and obvious causes; . . . (Citations omitted).

Considering all the circumstances and viewing the trial as a whole, we conclude that the use of the word "everything" was not prejudicial to defendant. K.O., S.B., L.W. and S.W. had all testified prior to S.W.'s teacher. None of the girls' testimony implied that there was ever penis-in-vagina sexual contact between the defendant and themselves. Therefore, it would be highly unlikely that the jury would take the meaning of the word "everything" as used in the teacher's testimony out of the context of the rest of the testimony they heard throughout the trial.

We conclude that the defendant was not deprived of a fair and impartial trial and there is no manifest necessity to declare a

13

mistrial.    We  hold  that  the  District  Court  correctly  denied
defendant's motion for mistrial.

Affirmed.

_____
                                                        Justice

We Concur:

_____
                Chief Justice

_____

_____

_____

_____

_____
                Justices

14

Justice William E. Hunt, Sr., dissenting.

I dissent from the foregoing opinion for the reasons set forth in my dissent in State v. Matt (Mont. 1991), 814 P.2d 52, 48 St.Rep. 614.

_____
                Justice

15