JUSTICE WEBER
dissents as follows:
As presented in the majority opinion, I will discuss the assertions by the State that the District Court abused its discretion by: (1) underestimating the relevance and significance of other crimes evi *359 dence in conspiracy cases; (2) applying too strict a similarity standard and comparing the characteristics of fires rather than the characteristics of the conspiracies; and (3) finding that the prejudicial effect of the prior acts substantially outweighed the probative value of the evidence.
Relevance and significance of other crimes evidence in conspiracy cases. The majority opinion does not discuss this at length. I conclude it is the primary issue. The majority opinion does point out that the District Court stated: “The fact that Hardy and Rippingale may have a history of criminal involvement is not a permissible purpose under Rule 404(b).” I conclude the District Court was in error in stating that a history of criminal involvement was not a permissible purpose. Defendant Thomas Rippingale is charged by information with conspiracy. The State cited Imwinkelried, Uncharged Misconduct Evidence § 4.22, which describes the unique proof which a conspiracy prosecution requires, and points to the relevance of the past relationships of criminal involvement in a conspiracy case. Imwinkelreid states:
Suppose that the defendant is charged with a conspiracy. Under substantive criminal law, the prosecutor must show that the defendant performed the act of entering into an illegal agreement with the alleged coconspirator or coconspirators. The prosecutor has evidence that the defendant and the alleged coconspirator have had prior illegal dealings. May the prosecutor offer that evidence to prove the act of entering into the charged illegal agreement without violating the character prohibition?
Numerous cases allow the prosecutor to do precisely that. In principle, this is a legitimate use of uncharged misconduct evidence. The prosecutor is not merely offering evidence of the defendant’s prior misconduct with third parties and arguing that since the defendant once entered into an illegal transaction, he or she probably entered into the charged illegal agreement. Rather, the prosecutor is offering evidence of the defendant’s special relationship with the same coconspirator involved in the charged conspiracy and contending that the earlier, special relationship increases the likelihood that they entered into the later, charged conspiracy. This theory of logical relevance is tenable. It is unlikely that a criminal would approach a complete stranger with a proposal for an unlawful conspiracy. It is much more plausible that the defendant will approach someone the defendant trusts and someone *360 whom the defendant knows is willing to engage in illegal activity. This is a permissible noncharacter theory of logical relevance. (Footnotes omitted.) (Emphasis supplied.)
Imwinkelried, Uncharged Misconduct Evidence § 4.22. I agree with Imwinkelried’s conclusion that the relationships between coconspirators are both permissible and relevant where a conspiracy has been charged. Here the relationship between Hardy and Rippingale is of central importance to a prosecution. In United States v. Jones (11th Cir. 1991), 933 F.2d 1541, 1546, the circuit court concluded that evidence of another crime among coconspirators was relevant not only to motive and intent, but also “to explain the relationship” among them. That theory is directly applicable in the present case. In a similar manner, in United States v. McKoy (9th Cir. 1985), 771 F.2d 1207, 1214, the Ninth Circuit concluded that evidence of other crimes was admissible to “explain the nature of the relationship” between coconspirators and acknowledged that “evidence of prior criminal acts may be relevant in conspiracy cases to show the background and development of the conspiracy.” In its Modified Just Notice in the present case, the State listed the involvement of these two men in criminal activities as accomplices as one of its purposes. I believe that was clearly relevant.
Evidence of a past relationship between Rippingale and Hardy constituted a foundation upon which a subsequent conspiracy could be built. The District Court concluded that it was relevant that Rippingale received $40,000 in insurance proceeds from the duplex fire while Anderson received over $400,000 from the mansion fire. I do not believe that the receipt of the monies by different parties destroys the conspiracy aspect. In its notice, the State also proposed that the evidence of prior conspiracy was relevant to the issues of motive, intent and plan and I believe those are properly a basis for admission as well.
I therefore conclude that under part (3) of the Modified Just Rule, the evidence of the other crime was admissible to prove motive, intent, plan, and also as an explanation of the conspiracy relationship between the parties. While the latter aspect is not specifically set forth in the Modified Just Rule, this Court has determined that the evidence must be logically relevant to one of the listed purposes “or some other fact in issue and not merely introduced as proof of a character defect.” State v. Sadowski (1991), 247 Mont. 63, 72, 805 P.2d 537, 542.
*361 Standard of similarity. Other crimes must be similar. The majority points out that the primary reason given by the District Court for its ruling was that the fire at Rippingale’s duplex was not similar to the fire at the mansion. I conclude the District Court abused its discretion, by applying too strict a similarity standard. The similarity between the uncharged conduct and the charged conduct is clearly material. Both acts involved an agreement between Rippingale and Hardy to commit arson. In both instances Rippingale approached Hardy with the request to set the fire and Rippingale was shown to be the instigator. Hardy was the man who actually set the fires. Finally, Rippingale and Hardy coordinated when the fires were to happen. In the duplex fire, Rippingale told Hardy when to set the fire, and in the mansion fire, Hardy and Rippingale talked the night before the fire.
The District Court emphasized that it was significant that Rippingale was paid the insurance proceeds on the duplex fire and Anderson was paid the insurance proceeds on the mansion fire. I suggest this has little relevance. The similarity lies in the allegation that insurance proceeds were paid to the owner as a result of arson. I conclude similarities between the two incidents Eire clearly sufficient to meet the similarity test as enunciated in other Montana cases.
As an example that such a strict rule of similarity has not been applied in Montana, State v. McKnight (1991), 250 Mont. 457, 820 P.2d 1279, held that a sexual assault was sufficiently similar to sexual intercourse without consent to allow evidence of the assault under the Modified Just Rule. In a similar manner, prior violent uncharged sex crimes were sufficiently similar to deliberate homicide to allow such evidence. See State v. Gambrel (1990), 246 Mont. 84, 803 P.2d 1071.
I would therefore conclude that the prior conspiracy established sufficient similarity under the Rule.
Prejudicial effect outweighs probative value. The majority concludes that the District Court was correct in stating that even if the similarity prong can be considered as being satisfied, the evidence should not be admitted because its probative value was substantially outweighed by the danger of unfair prejudice to Rippingale. Here the District Court emphasized that the proposed evidence was uncorroborated testimony of an alleged accomplice and that the credibility would be hotly contested at trial. This Court has concluded that prejudice alone is not a sufficient reason to refuse admission of evidence under the Modified Just Rule. See McKnight, 820 P.2d at 1284. “Unfair prejudice” has been previously defined by this Court in *362 State v. Paulson (1991), 250 Mont. 32, 43, 817 P.2d 1137, 1144 (quoting 10 James Wm. Moore, Moore’s Federal Practice § 403.10[1]), as follows:
[B]y restricting the rule to evidence which will cause “unfair prejudice” the draftsmen meant to caution courts that mere prejudicial effect is not a sufficient reason to refuse admission. Probative evidence will frequently be prejudicial to a party, but that does not mean that it will cause the fact finder to ground a decision on an emotional basis. Thus, evidence which tends to horrify, evoke sympathy or increase a desire to punish due to a prior act of a party and whose probative value is slight may be properly excluded. (Footnotes omitted.) (Emphasis supplied.)
The District Court failed to properly apply this standard in making a finding of unfair prejudice. The evidence here does not horrify, evoke sympathy or increase a desire to punish, and the probative value is certainly not slight. All we find here is that the evidence would have some prejudicial effect but that in itself is not a sufficient reason to refuse admission under State v. Paulson.
I would therefore conclude that the District Court abused its discretion in concluding that the evidence should be excluded because its probative value is substantially outweighed by the danger of prejudice.
I would reverse the decision of the District Court.