No. 95-424

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

STATE OF MONTANA,

       Plaintiff and Respondent,

  v.

LEONARD LOWELL MARTIN
a/k/a LEN MARTIN,

       Defendant and Appellant.

FILED

NOV 14 1996

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Eleventh Judicial District,
                In and for the County of Flathead,
                The Honorable Katherine R. Curtis, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

          Stephen J. Nardi; Sherlock & Nardi, Kalispell,
          Montana

       For Respondent:

          Hon. Joseph P. Mazurek, Attorney General,
          John Paulson, Ass't Attorney General,
          Helena, Montana

          Thomas Esch, Flathead County Attorney, Kalispell,
          Montana

Submitted on Briefs:  August 8, 1996

Decided:  November 14, 1996

Filed:

_____
             Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Len Martin (Martin) appeals from the judgment and sentence entered by the Eleventh Judicial District Court, Flathead County, on a jury verdict finding him guilty of three counts of sexual assault, two counts of sexual intercourse without consent and two counts of deviate sexual conduct, all felony offenses. We affirm.

Martin raises the following issues on appeal:

1. Did the District Court abuse its discretion in denying Martin's motion to sever the charges against him?

2. Did the prosecutor engage in misconduct which deprived Martin of his right to a fair trial?

3 . Did the District Court abuse its discretion in allowing the State to cross-examine a defense witness with regard to whether that witness provided false information in an unrelated criminal proceeding?

The State of Montana (State) filed two separate informations against Martin. All of the charges against Martin contained in the informations were sexual offenses by Martin against minor children. In Cause No. DC-94-197(B), the State charged Martin with one count of sexual intercourse without consent, two counts of sexual assault and three counts of deviate sexual conduct. In Cause No. DC-94-201(B), it charged Martin with two counts of sexual intercourse without consent and two counts of sexual assault. Martin pled not guilty to all of the charges.

The State moved to consolidate, contending that the cases were related; that the offenses in both occurred in the same time frame;

2

and that consolidation would be in the interests of judicial economy. The District Court granted the State's motion without input from Martin and without holding a hearing. Thereafter, Martin moved to sever the counts against him into five separate cases for trial purposes. After conducting a hearing, the District Court concluded that Martin had not met his burden of proving that prejudice would result from joinder of all of the counts and denied Martin's motion to sever.

Prior to trial, Martin moved to dismiss three counts of deviate sexual conduct as multiplicitous, and one count of sexual assault based on a lack of evidence. The District Court denied his motion with regard to the deviate sexual conduct charges, but dismissed the sexual assault charge. Subsequently, pursuant to a motion by the State, the court dismissed one count of deviate sexual conduct.

All of the incidents forming the basis of the charges against Martin occurred at his cabin on the North Fork of the Flathead River. K.T. testified that she was alone with Martin at his cabin on several occasions when she was between the ages of seven and nine and, on such occasions, the following events occurred. Martin asked her to haul wood at his cabin and offered her a glass of water to drink before she did so. K.T. stated that the water smelled like alcohol. Later, Martin sat next to K.T. on the couch and put his hands on her legs and moved his hands beneath her underwear. K.T. asked Martin to remove his hands, but he refused. On another occasion, Martin laid on top of K.T. in his night

clothes and moved his body around. K.T. would attempt to hide from Martin in the loft of the cabin. She did not tell anyone about what Martin had done to her because he had threatened to hurt her and her family.

C.H.'s grandparents owned a cabin near Martin's cabin. C.H. and Martin's stepson, Cody, were friends and C.H. went over to Martin's cabin on numerous occasions to see Cody. When C.H. was ten years old and visiting Martin's cabin in 1992, Martin asked Cody and C.H. if they would like to go outside and roast marshmallows. Martin built a fire and sent Cody to C.H.'s grandparents' cabin for marshmallows. Martin fondled C.H. and then led C.H. to some brush off of a trail near the cabin, where he continued to fondle C.H.'s penis, made C.H. rub his penis and had anal intercourse with C.H. C.H. did not tell anyone about the incident with Martin because Martin threatened to kill him and his family.

M.G. lived near Martin in Kalispell, Montana. When M.G. was thirteen years old, Martin asked M.G. if M.G. would go to his cabin and help him burn some brush. Martin bought M.G. a six-pack of beer on the way to the cabin and, after arriving there, gave M.G. several shots of whiskey. M.G. became very drunk and felt sick to his stomach. M.G. laid down on the floor and Martin rubbed his stomach; Martin told M.G. that he learned in alcohol classes that rubbing the stomach in different directions "make[s] the sickness go away." Martin began rubbing M.G.'s penis. M.G. passed out and,

4

when he woke up, Martin was on top of him having anal intercourse with him. M.G. became sick and threw up

K.G. is M.G.'s younger brother. When K.G. was eleven years old, Martin asked K.G. to help him fill in a ditch at the cabin. On the way to the cabin, Martin stopped and bought K.G. some Mad Dog wine. At the cabin, Martin suggested that K.G. lie down so he could rub K.G.'s stomach and make K.G. sober. Martin moved his hand down K.G.'s pants and fondled K.G.'s penis. K.G. became sick and threw up on his shirt.

At the close of the State's case-in-chief, the District Court dismissed one count of sexual intercourse without consent, allegedly committed against K.T., due to a lack of evidence. A jury found Martin guilty of the remaining seven charges, which included two counts of sexual intercourse without consent, three counts of sexual assault and two counts of deviate sexual conduct. Martin appeals

> 1. Did the District Court abuse its discretion in denying Martin's motion to sever the charges against him?

> Section 46-13-211(1), MCA, provides:

> If it appears that a defendant or the prosecution is prejudiced by a joinder of charges or defendants in an indictment, information, or complaint or by a joinder for trial together, the court may order separate trials, grant a severance of defendants, or provide whatever other relief justice requires.

In determining whether to grant a motion to sever, trial courts must balance the possibility of prejudice to the defendant against the judicial economy resulting from a joint trial. State v. Richards (1995), 274 Mont. 180, 188, 906 P.2d 222, 226-27 (citing

State v. Campbell (1980), 189 Mont. 107, 120, 615 P.2d 190, 198). This balancing process is within the discretion of the trial court and, absent an abuse of discretion, we will not substitute our judgment for that of the trial court. Richards, 906 P.2d at 227.

Judicial economy weighs heavily in the court's balancing process. Richards, 906 P.2d at 227 (citing Campbell, 615 P.2d at 198). Factors providing the basis for the predisposition for joint trials include expediting the administration of justice, reducing congestion in trial dockets, conserving judicial time, reducing the burden on jurors in terms of time and money sacrificed, and avoiding recalling witnesses who otherwise would only have to testify once. Richards, 906 P.2d at 227; Campbell, 615 P.2d at 198.

A criminal defendant moving for severance under § 46-13-211(1), MCA, bears the burden of proving that joinder of the charges is prejudicial. See State v. Slice (1988), 231 Mont. 448, 451, 753 P.2d 1309, 1311. It is not sufficient that the defendant prove some prejudice or that he or she stands a better chance of acquittal if separate trials are held. Richards, 906 P.2d at 227. To satisfy this burden, the defendant must prove that the prejudice was so great as to prevent a fair trial. Richards, 906 P.2d at 227 (citations omitted). As a result of the defendant's burden of proof, the strong pressure in favor of joinder of charges exerted by considerations of judicial economy and the deference afforded trial courts, we seldom reverse a trial court's denial of a

6

criminal defendant's motion to sever.  See Campbell, 615 P.2d at 198 (citations omitted).

Three types of prejudice may result from the consolidation of charges. Richards, 906 P.2d at 227. First, a jury may consider the criminal defendant facing multiple charges a "bad man" and accumulate evidence until it finds him guilty of something. Second, a jury may use proof of guilt on one count to convict the defendant of a second count even though the proof would be inadmissible at a separate trial on the second count. Third, prejudice may occur when the defendant wishes to testify on his or her own behalf on one charge but not another. Richards, 906 P.2d at 227 (citing State v. Orsborn (1976), 170 Mont. 480, 555 P.2d 509). We consider each type of prejudice below vis-a-vis Martin's arguments and the evidence presented.

## A. Accumulation of Evidence

The first type of prejudice occurs where the jury accumulates evidence to convict the defendant of something because he is a bad person.  The cumulative effect of evidence is not sufficient, standing alone, to warrant severance. Richards, 906 P.2d at 227.

Martin argues that joinder of the multiple charges and the use of overlapping evidence invited the jury to convict him because he was a bad person.  He does not establish that this type of prejudice occurred, however, and a bald assertion that the multiple charges and overlapping evidence "invited" the jury to convict him is insufficient to meet his burden of demonstrating the existence of this first type of prejudice.

## B. Use of Inadmissible Evidence

The second type of prejudice occurs when the jury uses proof of guilt on one count to convict the defendant of another count even though the evidence would have been inadmissible at a separate trial on the second count. No prejudice of this type will be found where the evidence presented at the joint trial was simple and distinct. Richards, 906 P.2d at 227 (citations omitted). Moreover, when the charges are few and the evidence is straightforward, there is no reason to assume the jury was confused and unable to keep the relevant evidence separate. Campbell, 615 P.2d at 199 (citations omitted).

Martin contends that he was prejudiced by joinder of the numerous charges involving K.T., C.H., M.G. and K.G. because evidence'relating to the separate charges against him would not have been admissible in separate trials. He relies on Rule 404(b), M.R.Evid., and State v. Matt (1991), 249 Mont. 136, 814 P.2d 52

In Matt, we modified the Just rule for the admission of evidence of other crimes, wrongs or acts as established in State v. Just (1979), 184 Mont. 262, 602 P.2d 957. The Modified Just Rule, which sets forth the bases for, and limitations on, admission of evidence described in Rules 404(b) and 403, M.R.Evid., provides:

> (1) The other crimes, wrongs or acts must be similar.
> (2) The other crimes, wrongs or acts must not be remote in time.
> (3) The evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity with such character; but may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation,

8

> plan, knowledge, identity, or absence of mistake or accident.
>      (4) Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading of the jury, considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Matt, *814* P.2d at 56. Although not at issue in this case, the Modified Just Rule also clarifies the procedural protections previously required under Just. See Matt, 814 P.2d at 56.

### *(1) Similarity*

A separate act or crime need not be identical to the charged offense to be admissible as evidence, but there must be sufficient similarity between the prior act and the charged offense. State v. Romero (1993), 261 Mont. 221, 225, 861 P.2d 929, 932 (citing State v. Tecca (1986), 220 Mont. 168, 714 P.2d 136). Martin contends that the incidents involving K.T., C.H., M.G. and K.G. are not sufficiently similar under the Modified Just Rule.

Martin does not dispute that the incidents involving M.G. and K.G. are sufficiently similar to each other under the first prong of Modified Just; in both instances, he lured the boys to his cabin by requesting their help with work there, gave the boys alcohol and assaulted the boys after they became drunk. He argues, however, that the evidence regarding his alleged assaults of K.T. and C.H. was not sufficiently similar to have been admitted in a separate trial on the charges involving M.G. and K.G.

While we recognize that there are some differences between the incidents involving K.T. and C.H. when compared with each other and with the incidents involving M.G. and K.G., those differences do

9

not negate the similarity of the incidents. All four children were minors between seven and thirteen years of age at the time of Martin's acts. Each incident involved sexual contact by Martin with a minor while the minor was alone with Martin at his cabin. Martin asked K.T., M.G. and K.G. to help with work at his cabin; while he did not ask C.H. to do work at his cabin, he did send Cody away so that he could be alone with C.H. at the cabin.

Thus, the nature of the acts, the location of the incidents and the age of the victims were largely identical and, where not identical, were substantially similar. We conclude that the incidents involving the four children were sufficiently similar to be admissible pursuant to the first requirement of the Modified Just Rule.

*(2) Remoteness*

The incident involving K.T. occurred in 1987 and the incidents involving C.H., M.G. and K.G. occurred in 1992 and 1993. Martin argues that the passage of five years between the incidents rendered his sexual contact with K.T. an isolated incident too remote to be admissible, under the second Modified Just prong, in separate trials on the charges involving C.H., M.G. and K.G.

Remoteness goes to the credibility of the evidence rather than its admissibility, unless the remoteness is so great that the offered evidence has no value. Tecca, 714 P.2d at 139 (quoting State v. Doll (1985), 214 Mont. 390, 692 P.2d 473). Moreover, we consistently have declined to establish an arbitrary time limit for admitting other acts or crimes as evidence where such a cut-off

10

would exclude probative evidence.  See Tecca, 714 P.2d at 139. In addition, we have concluded that the remoteness problem is alleviated where there is a continuing pattern of similar conduct. See Tecca, 714 P.2d at 139 (citation omitted).

Here, the incidents at issue occurred within a five to six year time period.  While the K.T. incident properly may have been given less weight because of the time lapse, it was not inadmissible as a matter of law on remoteness grounds.  Furthermore, any remoteness concerns were alleviated by the pattern of similar conduct reflected in the later incidents.  We conclude that the evidence relating to K.T. was not too remote in time to have been admissible, under the second prong of the Modified Just Rule, in separate trials on the charges involving C.H., M.G. and K.G.

*(3) Purpose of Evidence*

Martin argues that only the evidence relating to M.G. and K.G. would have been sufficiently similar to be relevant for establishing a common plan or scheme.  On that basis, he contends that the testimony of K.T. and C.H. would have been inadmissible in separate trials to establish a common plan or scheme under the third prong of the Modified Just Rule.

We concluded above that the incidents involving K.T., C.H., M.G. and K.G. were sufficiently similar to be admissible under the first Modified Just Rule prong because, in each instance, Martin ensured that he would be alone at his cabin with the minor child. His argument on this third prong merely restates his earlier argument and does not go to the merits of the third Modified Just

11

prong.  We conclude that the evidence relating to K.T. and C.H. would have been admissible, under the third prong of the Modified <u>Just</u> Rule, as proof of a common scheme or plan and absence of mistake in separate trials.

*(4) Probative Value vs. Prejudicial Effect*

Martin argues that the prejudice to him of the evidence relating to his sexual acts against K.T., C.H., M.G. and K.G. outweighed its probative value and, therefore, that it would not have been admissible in separate trials.  We disagree.

Probative evidence is often inherently prejudicial to a criminal defendant; mere prejudicial effect is not sufficient, however, to render such evidence inadmissible.  State v. McKnight (1991), 250 Mont. 457, 465, 820 P.2d 1279, 1284 (citation omitted).  The "prejudice" prong of the Modified Just Rule precludes the admission of relevant evidence only where its probity is *"substantially* outweighed by the danger of unfair prejudice. . . ." <u>Matt</u>, 814 P.2d at 56 (emphasis added).  Unfairly prejudicial evidence would

> *cause the fact finder to ground a decision on an emotional basis.  Thus, evidence which tends to horrify, evoke sympathy or increase a desire to punish due to a prior act of a party and whose probative value is slight may be properly excluded.*

<u>McKnight</u>, 820 P.2d at 1284 (quoting State v. Paulson (1991), 250 Mont. 32, 43, 817 P.2d 1137, 1143-44).

The evidence relating to Martin's acts involving K.T., C.H., M.G. and K.G. was ineluctably prejudicial.  It did not meet the <u>McKnight</u> standard for exclusion under the fourth prong of the

*12*

Modified _Just_ Rule, however. First, the probative value of the evidence was substantial, rather than slight. Second, while prejudicial, the evidence of other acts did not likely horrify, evoke sympathy or increase a desire to punish on the charges at issue. We conclude that the prejudicial effect of the evidence of Martin's sexual acts against the children would not have substantially outweighed the probative value of that evidence so as to preclude its admissibility in separate trials under the fourth prong of the Modified Just Rule.

Martin has failed to establish that evidence which would have been inadmissible under the Modified Just Rule in separate trials was admitted during his trial as a result of joinder of the various charges against him. Therefore, we conclude that Martin did not establish the existence of the prejudice which occurs when a jury uses evidence of guilt relating to one charge to convict him on another charge even though the evidence would have been inadmissible in a trial on the second charge.

## C. Self-Incrimination

Martin's final argument relating to the District Court's denial of his motion to sever relates to the third type of prejudice which may result from joinder of charges. He contends that he wanted to testify on his own behalf as to the charges involving K.T. and C.H., but did not want to testify as to the charges involving K.G. and M.G. He argues, therefore, that joinder was improper because it confounded the presentation of his defense.

13

We observe, at the outset, that Martin's motion to sever addressed this type of prejudice only generally. He cited to cases involving the "confounding of a defense" prejudice, but his showing consisted of one sentence asserting that his privilege against self-incrimination would be severely compromised in a trial of numerous charges involving numerous victims. In responding to Martin's motion to sever, the State pointed out this deficiency. Martin did not reply and the District Court subsequently denied the motion to sever. While Martin made an offer of proof at trial that he desired to testify on some, but not all, of the counts, the offer of proof came too late to impact on the court's decision on his motion to sever.

Martin had the burden of proving joinder of the charges was prejudicial in confounding his defense by compromising his privilege against self-incrimination. See Slice, 753 P.2d at 1311. Martin's one sentence assertion that his privilege against self-incrimination would be compromised is insufficient to prove the existence of this type of prejudice.

A criminal defendant attempting to sever charges bears the burden of establishing that prejudice resulted from joinder and, in addition, that the prejudice was so great as to prevent a fair trial. See Richards, 906 P.2d at 227. We conclude that Martin failed to prove the existence of any one of the kinds of prejudice resulting from joinder which would have required the District Court to grant his motion to sever. Moreover, joinder in this case reduced the congestion of the District Court's trial docket;

14

avoided recalling the children as witnesses in separate trials, thereby reducing the trauma to the children; and conserved judicial time. Thus, joinder in this case promoted judicial economy, a factor which weighs heavily in a trial court's balancing process in determining whether to grant a motion to sever. See Richards, 906 P.2d at 227; Campbell, 615 P.2d at 198. We hold, therefore, that the District Court did not abuse its discretion in denying Martin's motion to sever.

2.     Did the prosecutor engage in misconduct which deprived Martin of a fair trial?

Martin argues that he was deprived of his right to a fair trial by three instances of prosecutorial misconduct. Specifically, he contends that the State improperly appealed to the jury to act as protectors of the community; improperly gave its opinion on witness credibility during its closing argument; and improperly called a rebuttal witness to impeach one of Martin's witnesses. The record before us demonstrates that Martin did not object at trial to any of the alleged instances of misconduct he now raises, and it is well established that we will not consider issues raised for the first time on appeal. See State v. Losson (1993), 262 Mont. 342, 351, 865 P.2d 255, 260; State v. Ogle (1992), 255 Mont. 246, 250-51, 841 P.2d 1133, 1135-36.

Moreover, § 46-20-104(2), MCA, provides:

Upon appeal from a judgment, *the court may review* the verdict or decision and *any alleged error objected to* which involves the merits or necessarily affects the judgment. *Failure to make a timely objection during trial constitutes a waiver of the objection except as provided in 46-20-701(2).*

15

(Emphasis added.)  Section 46-20-701(2), provides an exception to the § 46-20-104(2), MCA, waiver of objections not timely made where the alleged error was prejudicial to the defendant's guilt or punishment and:

> (a) the right asserted in the claim did not exist at the time of the trial and has been determined to be retroactive in its application;
> (b) the prosecutor, the judge, or a law enforcement agency suppressed evidence from the defendant [convicted person1 or his attorney that prevented the claim from being raised and disposed of; or
> (c) material and controlling facts upon which the claim is predicated were not known to the defendant [convicted person1 or his attorney and could not have been ascertained by the exercise of reasonable diligence.

Here, Martin's failure to object to the alleged instances of prosecutorial misconduct at trial constitutes a waiver of those objections pursuant to § 46-20-104(2), MCA. Martin does not argue that he is entitled to review of his arguments relating to prosecutorial misconduct under § 46-20-701(2), MCA. Accordingly, we decline to address the alleged instances of prosecutorial misconduct

> 3.    Did the District Court abuse its discretion in allowing the State to cross-examine a defense witness with regard to whether that witness provided false information in an unrelated criminal proceeding?

Martin's wife, Jan Martin (Jan), testified at trial on his behalf.  During cross-examination, the State inquired whether she was an alibi witness for Kenneth Coddell (Coddell) in a 1983 felony theft trial. Martin objected on relevancy grounds and the District Court heard arguments out of the presence of the jury.

According to the State, Jan had perjured herself in Coddell's felony theft trial in 1983 and subsequently was charged with

16

perjury.  She pled guilty to the misdemeanor offense of unsworn falsification to authorities. On that basis, the State argued that the facts surrounding Jan's testimony as Coddell's alibi witness in 1983 were relevant to her credibility as a witness on Martin's behalf

Martin relied on Rule 609, M.R.Evid., in support of his argument that the State could not impeach Jan's credibility based on the facts surrounding her providing false information on behalf of Coddell in 1983.  Rule 609 provides that "[f]or the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime is not admissible."  The State responded that it was not offering evidence of Jan's conviction, but that it was entitled to impeach Jan's credibility via "false information" evidence under Rule 608(b), M.R.Evid., which provides:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness.

The District Court ultimately agreed with the State, ruling that

> [the State] cannot admit evidence that [Jan] was convicted of a crime.  And [the State] can't ask her if she was convicted of a crime.  Under Rule 608(b), [the State] may inquire about specific instances of conduct of a witness that concerned the witness' character for truthfulness or untruthfulness.

Martin argues on appeal that the District Court abused its discretion by allowing the State to cross-examine Jan regarding whether she supplied false alibi information on behalf of Coddell

17

in 1983. The admissibility of evidence is within the discretion of the trial court and we review a trial court's determination of the admissibility of evidence only for an abuse of discretion. State v. Graves (1995), 272 Mont. 451, 458, 901 P.2d 549, 554; State v. Henderson (1994), 265 Mont. 454, 459, 877 P.2d 1013, 1016.

Here, the District Court properly limited the State's cross-examination of Jan regarding the false alibi information she had provided on Coddell's behalf, allowing only questions relating to Jan having provided false alibi information to authorities. That evidence clearly was admissible pursuant to Rule 608(b), M.R.Evid., as probative of Jan's veracity as a witness.

Martin contends that State v. Gollehon (1993), 262 Mont. 1, 864 P.2d 249, renders evidence regarding Jan providing false alibi information to authorities inadmissible under Rule 609, M.R.Evid. Gollehon is distinguishable from the present case.

In Gollehon, Gollehon attempted to cross-examine William Arnot (Arnot), a State witness, regarding thefts and burglaries he had committed. Gollehon also attempted to admit extrinsic evidence in this regard. Gollehon, 864 P.2d at 257-58. The district court relied on Rules 608 and 609, M.R.Evid., in refusing to allow Gollehon to cross-examine Arnot or present extrinsic evidence concerning Arnot's prior acts of theft or burglary. Gollehon, 864 P.2d at 258.

Gollehon argued on appeal that the rules of evidence permit him to introduce evidence of a witness' prior bad acts in order to prove the witness' dishonesty. He contended that Arnot's prior

18

acts of theft and burglary demonstrate his "'habit of doing things that impugned his ability to be credible and to tell the truth.'" Gollehon, 864 P.2d at 258.

We observed that adoption of Gollehon's reasoning would render any criminal act admissible to disprove the veracity of a witness. Agreeing that certain criminal acts indicate dishonesty--such as suppression of evidence, false pretenses, cheating and embezzlement--we declined to broaden that list to include theft and burglary. See Gollehon, 864 P.2d at 259. With regard to Rule 609, we stated that

> Gollehon's thinly-veiled proposed questioning of Arnot's prior convictions without mentioning the word "conviction" is not persuasive. Montana's Rule 609, M.R.Evid., is unique; it specifically prohibits evidence of a witness's prior convictions.

Gollehon, 864 P.2d at 259. We held that the district court had not abused its discretion in refusing to allow Gollehon to introduce evidence of this nature. Gollehon, 864 P.2d at 258-59.

Here, the State cross-examined Jan regarding false information she provided to authorities on Coddell's behalf. Like the offenses listed in Gollehon which indicate dishonesty--namely, forgery, bribery, suppression of evidence, false pretenses and embezzlement--the misdemeanor offense of unsworn falsification to authorities is an act which indicates dishonesty. Thus, unlike in Gollehon, the facts surrounding Jan's providing false alibi information bear directly on her truthfulness as a witness. Accordingly, Martin's reliance on Gollehon is misplaced.

19

Finally, Martin argues on appeal that evidence regarding the 1983 false alibi information was too remote to be admissible under Rule 608(b), M.R.Evid. The record reflects, however, that Martin did not raise this argument in the District Court. There, Martin relied entirely on Rule 609, M.R.Evid., in arguing against the admissibility of that evidence. "It is axiomatic that a party may not change the theory on appeal from that advanced in the district court." Henderson, 877 P.2d at 1016. Moreover, as already noted, we will not consider arguments raised for the first time on appeal. See Losson, 865 P.2d at 260.

We conclude that District Court properly limited the scope of the State's cross-examination of Jan pursuant to Rules 608 and 609, M.R.Evid. We hold, therefore, that the District Court did not abuse its discretion in allowing the State to cross-examine Jan regarding her providing false information on Coddell's behalf in 1983.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

20