No. 87-521

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

STATE OF MONTANA,

  Plaintiff and Respondent,

 -vs-

FAYE E. SLICE,

  Defendant and Appellant.

---

APPEAL FROM: District Court of the Fourth Judicial District,
      In and for the County of Missoula,
      The Honorable Douglas G. Harkin, Judge presiding.

COUNSEL OF RECORD:

  For Appellant:

    Larry D. Mansch, Public Defender, Missoula, Montana

  For Respondent:

    Honorable Mike Greely, Attorney General, Helena, Montana
    Dorothy McCarter, Assistant Attorney General
    Robert L. Deschamps, III, County Attorney, Missoula
    Montana

---

      Submitted on Briefs: March 3, 1988

        Decided: April 28, 1988

Filed:  APR 2 8 1988

_____
       Clerk

Justice John C. Harrison delivered the Opinion of the Court.

The defendant, Faye E. Slice, was tried on sixteen criminal counts: three counts of issuing a bad check, § 45-6-316, MCA (felonies); one count of forgery, § 45-6-325, MCA (felony); eight counts of deceptive practices § 45-6-317, MCA (felonies); two counts of felony theft § 45-6-301, MCA; one count of misdemeanor theft § 45-6-301, MCA; and one additional count of deceptive practices or in the alternative felony theft. Defendant Slice made a motion on March 13, 1987, to sever the charges filed against her pursuant to § 46-11-404, MCA, and the motion was denied April 13, 1987. A jury trial was held starting May 14, 1987 in Missoula County, before the Honorable Douglas G. Harkin. Slice was found not guilty of two counts of deceptive practices and found guilty on the remaining fourteen counts. Taking into account concurrent sentences, Slice was sentenced to a total of forty years imprisonment in the Montana State Prison with thirty-five years suspended. Slice appeals and we affirm the decision of the District Court.

The sole issue raised on appeal is whether the trial judge erred in denying defendant's motion to sever the charges filed against her pursuant to § 46-11-404, MCA.

Section 46-11-404, MCA states, in pertinent part:

. . .

> (2) The court in which the case is triable, in the interests of justice and for good cause shown, may, in its discretion, order that the different offenses or counts set forth in the indictment, information, or complaint be tried separately or divided into two or more groups and each of the groups tried separately. An acquittal of one or more counts shall not be considered an acquittal of any other count.

2

. . .

> (4) If it appears that a defendant or the state is prejudiced by a joinder of related prosecutions or defendants in a single charge or by joinder of separate charges or defendants for trial, the court may order separate trials, grant a severance of defendants, or provide any other relief as justice may require.

Slice argues there are three reasons why the charges should have been severed and separate trials granted. First, Slice contends that the amount of evidence presented had a cumulative effect convincing the jury she was a "bad person." Second, Slice contends that many of the crimes were unrelated and that much of the evidence presented would not have been admissible if the charges had been severed into related groupings and a separate trial held for each grouping. Finally, Slice states she desired to testify as to some, but not all, of the charges. Since the charges were all joined, Slice did not have the option of testifying as to only some of the charged offenses.

Slice relies on State v. Campbell (1980), 189 Mont. 107, 120, 615 P.2d 190, 198, in which we recognized three potential types of prejudice that could result from the joinder of offenses. Generally, these three types of potential prejudice are reflected in Slice's contentions which are cited above. In Campbell, we cited and relied upon State v. Orsborn (1976), 170 Mont. 480, 489, 555 P.2d 509, 514, 515, where we stated:

> First, the jury may consider [a] defendant who is subject to the multiple charges to be a bad man. The prejudice claimed is that the jury may tend to accumulate evidence against him until it finds him guilty of something. However, our examination of federal cases reveals that such a claim of prejudice rarely has

3

been found sufficient to provide relief. (Citations omitted.) . . .

Second, proof of guilt of one offense may be used to convict the defendant of another offense even though such proof may be inadmissible at a separate trial. However, where, as here, the alleged fact of the separate offenses was sufficiently distinct to allow the jurors to keep them separate in their minds, no prejudice will be found. (Citations omitted.)

Third, prejudice may result where the defendant wishes to testify on his own behalf on one charge but not on the other. But we note federal courts have only considered such a claim of prejudice where the alleged offenses were totally separate as to time, place and evidence. (Citation omitted.)

It is within the sound discretion of the trial judge to balance the prejudicial effects of joinder against the benefits of judicial economy realized from a joint trial. Absent an abuse of that discretion, we will not reverse the District Court decision. "In striking the balance between prejudice to a defendant and judicial economy, considerations of judicial economy exert strong pressure in favor of joint trials." Campbell, 189 Mont. at 121, 615 P.2d at 198. The defendant holds the burden of demonstrating prejudice. As we stated in Campbell:

In showing prejudice, it is not sufficient that the defendant prove some prejudice or that a better chance of acquittal exists if separate trials are held. Rather, the defendant must show the prejudice was so great as to prevent a fair trial. (Citations omitted.) Given this high standard of proof and the deference afforded to the discretion of the trial court's judgment on balancing prejudice against judicial economy, reversal of a decision not to sever

4

criminal charges is seldom granted. (Citations omitted.)

189 Mont. at 121, 615 P.2d at 198.

First, we will consider whether the charges had a cumulative effect which prejudiced defendant and resulted in an unfair trial. This is rarely a sufficient reason to justify severance. State v. Bingman (Mont. 1987), 745 P.2d 342, 348, 44 St.Rep. 1813, 1819. Defendant offers little evidence to achieve her burden of proof and basically relies on the bald assertion that sixteen criminal counts would simply cause the jury to view her as a "bad person." We will not reverse the District Court decision on this unsupported allegation. Furthermore, we note that the jury acquitted Slice on two charges. Although it is difficult to infer any facts from this outcome, it indicates that the jury considered each charge separately.

Defendant Slice also claims that evidence on certain counts assisted in obtaining a conviction on unrelated charges. If she had obtained separate trials, she contends much of this sort of evidence would have been inadmissible. We stated in Orsborn that no prejudice will be found if "the alleged fact[s] of the separate offenses [are] sufficiently distinct to allow the jurors to keep them separate in their minds." Orsborn, 170 Mont. at 489, 555 P.2d at 515.

Counsel for Slice describes the sixteen criminal counts as follows:

Count I: Issuing a Bad Check, Felony.

The Defendant was charged with writing checks to Mike Judd/Diamond Hitch Outfitters, in excess of $300.00, knowing that the checks would not be honored by the Montana Bank of South Missoula. The checks were written between June 15 and June 16, 1986.

Count II:   Issuing a Bad Check, Felony.

The Defendant was charged with writing checks to Mike Judd and to Service Typesetting, knowing that the checks would not be honored by the Montana Bank of South Missoula.   The checks were written between July 15 and August 15, 1986.

Count III:   Forgery, Felony.

The Defendant was charged with fraudulently delivering a signature card to the First Federal Savings and Loan Association on August 27, 1986. Additionally, the Defendant was charged with fraudulently delivering a falsified accountant statement to a member of a Missoula fund raising organization, on September 16, 1986.

Count IV:   Bad Check, Felony.

The Defendant was charged with issuing checks to a number of Missoula businesses, knowing that the checks would not be honored by the First Federal Savings and Loan.   The checks were written between August 28 and September 16, 1986.

Count V:   Deceptive Practices.

The Defendant was charged with making a false statement regarding her financial situation to the Montana Bank of South Missoula, between July 19 and September 9, 1986.

Count VI:   Deceptive Practices:

The Defendant was charged with making false statements to the public that she and her business, Reflections Photography, were selling calendars on behalf of a local charity (Heather McChesney or the Heather McChesney Fund), when all or most of the proceeds were

6

directed to another use. This alleged offense occurred between July 16 and September 16, 1986.

Count VII: Deceptive Practices.

The Defendant was charged with making false or deceptive statements to numerous Missoula businesses, that advertising money would cover printing costs for calendars to be sold as a fund raiser for the March of Dimes, when all or most of the money was directed to another use. This alleged offense occurred between March 12 and July 18, 1986.

Count VIII: Deceptive Practices.

The Defendant was charged with making false statements to various Missoula businesses, that she would use money paid by them to organize a "Fall Wedding Spectacular", when all the money was directed to another use. This alleged offense occurred between June 1 and September 16, 1986.

Count IX: Deceptive Practices.

The Defendant was charged with making false statements to several Missoula businesses that she would use money paid by them as rent money for a Missoula business building, when the money was converted to another use. This alleged offense occurred between August 24 and September 16, 1986.

Count X: Deceptive Practices.

The Defendant was charged with making a false statement regarding her financial situation to Bitterroot Motors, for the purpose of securing a loan to purchase an automobile. This alleged offense occurred on September 8, 1986.

7

Count XI:  Deceptive Practices.

The Defendant was charged with promising to hire two individuals as photography instructors for wilderness photography classes, when only one class occurred and neither person was paid as promised. This alleged offense occurred in April, 1986.

Count XII:  Deceptive Practices.

The Defendant was charged with falsely promising to pay two individuals a percentage of amounts collected for the Heather McChesney Fund, when the funds were diverted to another use. This alleged offense occurred between July 31 and September 16, 1986.

Count XIII:  Theft, Felony.

The Defendant was charged with exerting unauthorized control over a check owned by the Heather McChesney Fund, between August 19 and 24, 1986.

Count XIV:  Theft, Misdemeanor.

The Defendant was charged with exerting unauthorized control over a $40.00 wedding deposit check, on September 11, 1986.

Count XV:  Alternative Deceptive Practices or Theft.

The Defendant was charged with defrauding the public by obtaining March of Dimes contributions and converting them to her own use, or in the alternative exerting unauthorized control over March of Dimes contributions.

Count XVI:  Theft, Felony.

The Defendant was charged with exerting unauthorized control over unemployment

> benefits, between January 11 and July 3, 1986.

Slice fails to specifically state what evidence would have been inadmissible if separate trials had been granted and fails to demonstrate or explain why she received an unfair trial on these charges. Although this is a long list of offenses, we do not find that presenting evidence on all sixteen counts would necessarily create an unfair trial. Additionally, we note that if there had been several separate trials, much of the evidence regarding all the charges would have probably been admissible in each trial under the considerations of State v. Just (1979), 184 Mont. 262, 602 P.2d 957. The alleged offenses tend to be similar in that they involve deceitful actions regarding Slice's business and banking actions. The offenses occurred over no more than a nine month time span, with the bulk of the activity occurring in a much shorter period. The offenses tend to establish a common scheme or plan to gain financial benefits through deceit. Finally, the probative value of the evidence is quite high, while Slice fails to demonstrate any significant prejudice. We find no abuse of discretion by the District Court.

Slice also contends she was prejudiced because she wished to testify as to some offenses but not others. In Orsborn we indicated this type of claim might have some merit if "the alleged offenses were totally separate as to time, place and evidence." Orsborn, 170 Mont. at 489, 555 P.2d at 515. As noted above, the facts of this case do not deal with offenses which are totally separate as to time, place, and evidence.

Finally, Slice claims that the sheer volume of evidence involved in all of the counts confused the jury. Slice does not demonstrate any specific reason why she believes the jury

was confused. According to the record before us, the actual trial process appears to have lasted slightly over two weeks. We see no inherent reason why the jury would be confused and defendant has failed to carry her burden of demonstrating confusion resulting in an unfair trial.

For all of the foregoing reasons, the decision of the District Court is affirmed.

John Conway Harrison
Justice

We Concur:

William E. Hunt

John G. Sheehy

L.C. Ritchardson

Justices

10