No. 88-197

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

---

STATE OF MONTANA,

        Plaintiff and Respondent,

   -vs-

VERN TRAVIS BAKER,

        Defendant and Appellant.

---

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable James B. Wheelis, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Morgan Modine & Douglas Anderson; Missoula, Montana

    For Respondent:

        Hon. Marc Racicot, Attorney General; Helena, Montana
        Robert J. Deschamps III, County Attorney; Missoula, MT
        Betty Wing, Deputy County Attorney
        Karen Townsend, Deputy County Attorney

---

Submitted on Briefs: February 16, 1989

Decided: April 25, 1989

Filed:

_____
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Defendant was convicted on a jury verdict before the District Court, Fourth Judicial District, Missoula County, of robbery, a felony; theft, a felony; tampering with a witness, a felony; and theft, a misdemeanor. The District Court set aside the robbery conviction. Defendant was sentenced to 50 years at Montana State Prison for felony theft, and 50 years for tampering with a witness. He was also sentenced to 6 months in jail for misdemeanor theft. These sentences are to run concurrently. Defendant appeals those convictions. We affirm.

The issues are:

1. Did the District Court err in consolidating the charges?

2. Did the District Court err in admitting certain evidence?

3. Did the District Court err in giving an instruction on accountability during jury deliberations?

On February 5, 1987, the Missoula County Attorney filed an information charging Mr. Baker with robbery, a felony. On March 6, 1987, Mr. Baker was charged with felony theft. The second information was amended to include a charge of burglary. On May 4, 1987, defendant was tried on the robbery count but the jury did not reach a verdict. Later the information charging robbery was amended to include the offense of tampering with a witness.

After the trial on May 4, 1987, the county attorney filed a third information charging defendant with misdemeanor theft. Thereafter, the county moved to consolidate all the charges and that motion was granted on October 28, 1987.

The consolidated causes were tried by jury on November 23, 1987. Defendant was found guilty of robbery, felony

theft, tampering with a witness, and misdemeanor theft. Defendant moved the court to set aside the verdicts of guilty to robbery and felony theft. The court subsequently set aside the verdict of guilty of robbery.

The relevant facts in this case began on December 13, 1986, when Gary Deschene reported to the Missoula County Sheriff's office that a gun was missing from his home. Following a Crimestopper's tip, detectives searched the home of Mr. Baker for this gun, but did not find it. On July 14, 1987, a skindiver found a gun underneath Buckhouse Bridge in the Bitterroot River. He turned the gun over to the sheriff and Mr. Deschene identified it as the one missing from his home.

At trial, Mr. Baker's girlfriend, Katherine Lamb, testified that Mr. Baker had told her he had a gun he had to dispose of, and that she had accompanied him to the Buckhouse Bridge where Mr. Baker threw the gun into the river.

A friend of Mr. Baker, Lance Sprout, testified at trial that on January 17, 1987, he and Mr. Baker entered the home of Lloyd Willumsen and took two rifles and a box of pistols. Mr. Sprout stated that Mr. Baker later went back to that residence and took a shotgun, binoculars, and several other items.

Mr. Sprout also testified that five days later, on January 22, 1987, he approached his cousin about borrowing a car. The cousin arranged for Mr. Sprout to borrow a car from a friend. The car Mr. Sprout borrowed was a blue Honda Civic with personalized license plates which said, "MARSBAR." Mr. Sprout stated that he picked up Mr. Baker in the borrowed car, and after a couple of stops, they decided to rob Payless Shoe Store in Missoula. Mr. Sprout testified that he and Mr. Baker robbed the store, using the sawed-off shotgun taken from the Willumsen residence.

A citizen driving by observed the two men leaving Payless Shoe Store with stockings over their heads. The citizen followed them as they drove away, obtaining a vehicle description and license plate identification. Later that night the car was stopped by a Missoula deputy who observed it near the Missoula County Courthouse.

When the car was searched, detectives found items used in the robbery and items taken from the store. They also found rifles and other items taken from the Willumsen home. When detectives searched defendant's grandmother's house, where Mr. Baker lived, they found a shotgun scabbard in her car, also belonging to Mr. Willumsen.

At trial Mr. Baker's girlfriend, Katherine Lamb, testified that Mr. Baker called her while he was awaiting trial, and asked her to testify that he had called her on the phone at 8:00 p.m. on the night of the robbery. She testified that he later sent a letter to her in which he suggested that she get together with his mother and grandmother, decide on how they would answer questions, and "rehearse, rehearse, rehearse." He said they all needed to stick together and not discuss it with anyone else "until we have it down to a 'T'." This letter, which was admitted into evidence at trial, implied that an alibi should be formulated.

I

Did the District Court err in consolidating the charges?

The first issue on appeal is whether the District Court properly joined the various charges against Mr. Baker. The relevant statute on joinder, § 46-11-404, MCA, provides in pertinent part:

> (1) An indictment, information, or complaint may charge two or more different offenses connected together in their commission, different statements of the same offense, or two or more different

4

offenses of the same class under separate counts. If two or more indictments, informations, or complaints are filed in such cases in the same court, the court may order them to be consolidated. . . .

(4) If it appears that a defendant or the state is prejudiced by a joinder of related prosecutions or defendants in a single charge or by joinder of separate charges or defendants for trial, the court may order separate trials, grant a severance of defendants, or provide any other relief as justice may require.

Joinder is proper where the offenses are logically linked by motive and where overlapping proof must be offered. United States v. Hoelker (9th Cir. 1985), 765 F.2d 1422, 1425. In this case the burglary and felony theft charges stemmed from the same incident, which was the burglary of the Willumsen residence. These charges were connected to the robbery charge in that the gun stolen from Mr. Willumsen was used in the robbery. Additionally, other items stolen from the Willumsen residence were found in the car which was used in the robbery. Separate trials would have required overlapping evidence, and many of the same witnesses. The robbery supplied the motive for the witness tampering charge which was therefore properly joined. State v. Bingman (1987), 745 P.2d 342, 44 St.Rep. 1813. There was evidence indicating that the misdemeanor theft of the Deschene gun, committed a month prior to the other crimes, was done in furtherance of a plan to commit an armed robbery. The crimes were logically connected by motive and there was a large area of overlapping proof among the separate charges. We therefore hold that the District Court's joinder of these charges was not clearly erroneous.

Having concluded that joinder was not clearly erroneous, the second inquiry is whether the motion to sever should have been granted due to prejudice to the defendant. We have previously enumerated three basic types of prejudice which

may occur on consolidation. State v. Campbell (1980), 189 Mont. 107, 120, 615 P.2d 190, 198. State v. Orsborn (1976), 170 Mont. 480, 489, 555 P.2d 509, 514-515. In Campbell, we stated:

> The first kind of prejudice results when the jury considers a person facing multiple charges to be a bad man and tends to accumulate evidence against him until it finds him guilty of something. The second type of prejudice manifests itself when proof of guilt on the first count in an information is used to convict the defendant of a second count even though the proof would be inadmissible at a separate trial on the second count. The third kind of prejudice occurs when the defendant wishes to testify on his own behalf on one charge but not on another. (Citation omitted.)

615 P.2d at 198.

Prejudice to defendant is balanced against judicial economy. This balancing is left to the sound discretion of the trial judge and the appellate court will not substitute its judgment for that of the trial court, absent a showing of abuse of discretion. Judicial economy weighs heavily in the balancing process, and the burden is on the defendant to show that prejudice outweighs this. Campbell, 615 P.2d at 198.

In the present case defendant contends that consolidation of the charges was prejudicial because the number of charges against him allowed the jury to regard him as a "bad man." In the recent case of State v. Slice (1988), 753 P.2d 1309, 1311, 45 St.Rep. 752, 754, this Court stated that the cumulative effect of multiple charges is "rarely a sufficient reason to justify severance." In Slice, the defendant faced 16 criminal counts at trial, yet the court found insufficient prejudice to require severance. See also, Campbell, 615 P.2d at 199, (where the district court refused to sever a habitual traffic offender charge); Orsborn, 555 P.2d at 515.

In support of his contention that the first type of prejudice occurred, Mr. Baker cites answers given by two jurors when the jurors were polled after trial. In polling the jurors, the court asked if the multiple charges made them think that the defendant was more likely to be guilty. The court and defense counsel framed this question several different ways in attempts to clarify precisely what was being asked of the jurors. The court finally directed the jurors as follows:

> THE COURT: Well, see if you can answer that. If you can't understand, just say, "I can't answer. I don't understand."

Two jurors responded, "I don't know." It is not at all clear that these jurors were indicating that they may have convicted Mr. Baker due to multiple charges. The jurors may have been responding to the court's direction to not answer if they did not understand the question as posed.

We conclude that neither the cumulative effect of the multiple charges nor the jurors' answers to the polling demonstrates prejudice to the defendant sufficient to deny him a fair trial. "In showing prejudice, it is not sufficient that the defendant prove some prejudice or that a better chance of acquittal exists if separate trials are held. Rather, the defendant must show the prejudice was so great as to prevent a fair trial." Campbell, 615 P.2d at 198 (citing United States v. Dohm (5th Cir. 1979), 597 F.2d 535, 539; United States v. Martinez (1st Cir. 1973), 479 F.2d 824, 828.) We affirm the holding of the District Court that defendant failed to demonstrate prejudice which would require severance.

Mr. Baker also contends that the second type of prejudice from joinder occurred at his trial. This type of

7

prejudice exists when the jury uses proof of guilt on one count in the information to convict a defendant on another count in the information even though proof would have been inadmissible at a separate trial on the second count. As we stated in Campbell:

> No prejudice of this nature will be found when the evidence presented at a joint trial is simple and distinct. This rule is based on the rationale that when the charges are few and the evidence straight forward, there is no reason to assume the jury was confused and could not keep the relevant evidence separate. (Citations omitted.)

615 P.2d at 199.

In the present case the charges were not complicated and the evidence was not complex. Defendant has failed to state what evidence was used to find him guilty on one count which would have been inadmissible in a separate trial. The jury was instructed that each count charges a distinct offense and that each count must be decided separately.

Defendant contends, however, that this second type of prejudice occurred because the jurors were confused. In support of this contention he notes that upon polling the jurors after trial, three jurors said they did not believe defendant was in the Payless Store when it was robbed. He argues that this shows the jurors were confused because no evidence was presented which portrayed defendant in a light other than as perpetrator. As additional evidence that confusion was "rampant" in the trial, defendant notes that the prosecutor made an incorrect statement about the evidence in closing argument. However, the jurors were also polled on the specific question of whether the multiple charges caused confusion in their minds, and each juror answered, "No." Defendant has not met his burden of showing the second type of prejudice. We therefore conclude that the defendant has

8

demonstrated no prejudice sufficient to deny him a fair trial or to require severance under § 46-11-404(4), MCA. We hold that the District Court's refusal to sever the charges was not clearly erroneous. We affirm the holding of the District Court on the motion to sever.

## II

Did the District Court err in admitting certain impeachment evidence?

Mr. Baker objects to the admission of a letter written by him to Randy Clark, an inmate at Montana State Prison. The letter contained a message to Lance Sprout, who was also incarcerated at Montana State Prison. In the message to Mr. Sprout, Mr. Baker suggests that "if someone accidentally somehow bumped his head and he got amnesia, they could not hold that against him," and "possibly the next statement in court will be so mixed up that it will be thrown out." At the end of the letter, Mr. Baker offers to send money, indicating that he will send generous amounts if his innocence is proven. This letter was introduced by the State on cross examination of Mr. Baker.

The State first asked Mr. Baker if it would have been to his advantage if Lance Sprout had not testified at Mr. Baker's trial, and if it would have been to his advantage if Mr. Sprout had gotten amnesia while he was at the prison. The State next asked Mr. Baker if he had ever written a letter making those suggestions. Mr. Baker's answers to the State's questions were evasive. Also, by his answers he attempted to suggest that the possibility of amnesia was Mr. Sprout's idea. Mr. Baker was then asked to read the letter to the jury. Defense counsel objected on grounds of relevancy and foundation. On appeal, the defense argues that the letter was irrelevant and prejudicial.

9

The letter was relevant to show consciousness of guilt and is admissible under Rule 404(b) M.R.Evid., which provides:

> Other crimes, wrongs, acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The second sentence of this subpart provides a list of exceptions to the general rule that other crimes, wrongs or acts are inadmissible to prove a person's character. Evidence of another act may be admissible to prove any of the enumerated reasons; however, this list is not exclusive and has been held to include evidence which tends to prove consciousness of guilt. State v. Shaw (1982), 199 Mont. 248, 648 P.2d 287, 289. In Shaw, evidence of intimidation of a witness was an act which was admissible to show consciousness of guilt. See also State v. Clark (1984), 209 Mont. 473, 682 P.2d 1339, 1350.

In Shaw this Court stated that "[i]n a criminal prosecution any attempted intimidation of a witness is properly attributable to a consciousness of guilt and testimony relating thereto is relevant and admissible in evidence." Shaw, 648 P.2d at 289-290, quoting People v. Smith (1972), 3 Ill.App.3d 958, 279 N.E.2d 512, 513. In Clark we noted that this rationale applies to documentary as well as testimonial evidence. Clark, 682 P.2d at 1350. In the present case we believe that the letter in which Mr. Baker attempted to influence Mr. Sprout's testimony evidences defendant's consciousness of guilt. As such, we conclude that the letter

10

was relevant and admissible pursuant to Rule 404(b), M.R.Evid.

Defendant argues that even if this evidence were admissible as "other acts" pursuant to 404(b), the four element test of admissibility and procedural requirements established in State v. Just (1979), 184 Mont. 262, 602 P.2d 957, were not met. However, the Just requirements do not apply in the present case. The defendant in Shaw raised the same argument but this Court disagreed, stating:

> Both the admissibility test and the procedural requirements found in Just pertain to evidence of other prior crimes but do not apply to evidence establishing consciousness of guilt regarding the crime with which the defendant is charged.

Shaw, 648 P.2d at 290.

We hold that the District Court's ruling which admitted the letter was not clearly erroneous.

III

Did the District Court err in giving an accountability instruction during jury deliberations?

During deliberations, the jury submitted a question to the court which stated, "The charge of robbery, Instruction No. 8, how does it apply to Instruction 11 regarding accomplice?" The court and counsel for both parties considered this question in chambers but were unsure what the jurors actually wanted to know. After the court asked the jurors to clarify their question, and after discussion with counsel, the court decided to instruct the jury on the offense of accountability as defined by §§ 45-2-301 and 302, MCA. The jury later returned verdicts of not guilty to burglary of the Willumsen residence, but guilty of theft of the items taken in that burglary. Defendant argues that this is an inconsistency caused by the giving of the accountability instruction.

11

Defendant also contends that the accountability instruction was a material variation of the crimes charged and that it was error to give this instruction after closing argument because he was precluded from discussing this theory with the jury, citing State v. Bretz (1979), 180 Mont. 307, 590 P.2d 614. Defendant's ultimate contention on this issue is that the District Court erred in not setting aside the verdict of guilty to theft.

We decline to address whether the court erred in giving this instruction during jury deliberations because we conclude that the jury's determination that Mr. Baker was guilty of felony theft need not be premised on an accountability theory in this case. There was sufficient evidence presented for the jury to find Mr. Baker guilty of theft without the accountability instruction, and without finding him guilty of burglary.

We hold that the District Court properly refused to set aside the conviction for theft.

_____
Justice

We Concur:

_____
_____
_____
_____
Justices

12