No.  93-429

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

STATE OF MONTANA,

   Plaintiff and Respondent,

v.

BECKY L. RICHARDS,

   Defendant and Appellant.


APPEAL FROM:  District Court of the Fourth Judicial District,
              In and for the County of Missoula,
              The Honorable Ed McLean, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

        William Boggs, Missoula, Montana

        For Respondent:

              Robert L. Deschamps, III, Missoula County Attorney,
              Missoula, Montana; Hon. Joseph P. Mazurek, Attorney
              General,  Patricia  Jordan,  Assistant  Attorney
              General; Helena, Montana

FILED

Filed:   NOV 22 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  July 27, 1995

                Decided:  November 22, 1995

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

Defendant Becky Richards (Richards) was convicted by a jury in the District Court for the Fourth Judicial District, Missoula County, of one count of deliberate homicide and forty-nine counts of related economic crimes involving theft, forgery and deceptive practices. Richards was sentenced to life imprisonment in the Women's Correctional Facility on the deliberate homicide count. She received suspended sentences on the economic counts and was ordered to pay restitution in the amount of $68,968.60. Richards was designated a dangerous offender for purposes of parole eligibility. She appeals those convictions. We affirm.

We address the following issues on appeal:

1. Was the evidence sufficient to support Richards' conviction on Counts 1, 3, 4, 48 and 55?

2. Did the District Court err in denying Richards' motion to sever the economic counts from the deliberate homicide count?

Background Facts

On October 22, 1992, Richards was charged by information with one count of deliberate homicide, fifty-one counts of felony theft, seven counts of felony forgery and one count of felony deceptive practices. The information charged that on March 5, 1992, Richards caused the death of her husband by shooting him in the head with a pistol. The majority of the other fifty-nine counts alleged that Richards had obtained or exerted unauthorized control over funds from her husband's business, Richards Logging, while she was acting

2

as bookkeeper for the company. Six of the counts alleged various economic crimes by Richards against other parties.

On January 19, 1993, defense counsel filed a motion to sever all of the fifty-nine economic counts from the deliberate homicide count. The District Court denied the motion and Richards went to trial on all sixty counts. During the trial, one count of felony theft was dismissed by the court and one count of felony forgery was reduced by the State to misdemeanor forgery. After deliberating for four days, the jury found Richards guilty on the deliberate homicide count and forty-nine of the economic counts including the count that had been reduced to misdemeanor forgery.

Richards was sentenced to six months in the Missoula County Jail on the misdemeanor forgery charge and ten years in the Women's Correctional Facility on each of the remaining economic counts. Richards' sentence on each of these counts was suspended and she was ordered to pay restitution in the amount of $68,968.60. Richards was sentenced to life imprisonment on the deliberate homicide charge and she was designated a dangerous offender for the purpose of parole eligibility. Richards appeals these convictions.

Issue 1

Was the evidence sufficient to support Richards' conviction on Counts 1, 3, 4, 48 and 55?

We review the sufficiency of the evidence to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State

3

v. Arlington (1994), 265 Mont. 127, 146, 875 P.2d 307, 318 (quoting State v. Cyr (1987), 229 Mont. 337, 339, 746 P.2d 120, 122).

In Counts 1, 3 and 4, Richards was charged with forgery pursuant to § 45-6-325, MCA (1991). This statute provides, in pertinent part:

> (1) A person commits the offense of forgery when with purpose to defraud he knowingly:
> (a) without authority makes or alters any document or other object apparently capable of being used to defraud another in such manner that it purports to have been made by another or at another time or with different provisions or of different composition;
> (b) issues or delivers such document or other object knowing it to have been thus made or altered;
> . . . .
> (2) A purpose to defraud means the purpose of causing another to assume, create, transfer, alter, or terminate any right, obligation, or power with reference to any person or property.

With respect to Count 1, the evidence showed that four checks made payable to Missoula Plans Exchange, were endorsed and cashed by Richards and that she pocketed the cash. The evidence further showed that as receptionist for Missoula Plans Exchange, Richards had authority to endorse the company's name on checks for deposit into the company's bank account, but she did not have the authority to endorse the company's name in order to cash checks for her own use. When an agent exceeds his authority with respect to an instrument in writing, with intent to defraud, the offense of forgery is committed. State v. Daems (1934), 97 Mont. 486, 496, 37 P.2d 322, 327.

The evidence on Count 3 showed that two postal money orders made out to Blackfoot Parish were purportedly purchased by Richard McNeely, former Pastor of the parish, to reimburse the parish for

4

personal expenses it paid on behalf of McNeely. However, McNeely testified that he knew nothing about these money orders. The testimony further showed that the money orders were intended to cover up Richards' diversion of parish funds to her own use while she was bookkeeper for the parish. Inserting McNeely's name on the money orders, with the knowledge that he had not given authority for the use of his name and with an intent to defraud the parish, constitutes forgery. Section 45-6-325, MCA (1991).

With respect to Count 4, the evidence showed that a money order made payable to "Jim & Becky Richards" as payment for rental property owned by Jim Richards was altered by Richards after her husband's death to read "Jim or Becky Richards" and cashed by Richards. Jim Richards' estate was thereby defrauded of its interest in these funds.

In Count 48, Richards was charged with deceptive practices pursuant to § 45-6-317, MCA (1991). The evidence showed that, in applying for a loan, Richards represented to Norwest Financial that two snowmobiles owned by Richards Logging were free of liens and available as collateral for the loan. Richards failed to disclose to Norwest Financial that these snowmobiles were encumbered by a prior lien to First Interstate Bank.

Section 45-6-317, MCA (1991), provides, in pertinent part:

> (1) A person commits the offense of deceptive practices when he purposely or knowingly:
> . . . .
> (c) makes or directs another to make a false or deceptive statement to any person respecting his financial condition for the purpose of procuring a loan or credit . . . .

5

The offense of deceptive practices is complete upon the knowing or purposeful making of a false financial statement. See State v. Cassill (1924), 70 Mont. 433, 438-39, 227 P. 49, 52.

In Count 55, Richards was charged with theft pursuant to § 45-6-301, MCA (1991). The evidence showed that Richards Logging purchased a 1989 Indy Trail Polaris snowmobile on December 30, 1991, and sold it on January 10, 1992. The payee line on the check received from the purchaser of this snowmobile was filled in by Richards with her name and the check was deposited into her account. Testimony at trial showed that Richards Logging never received payment for the sale of this company asset.

Section 45-6-301, MCA (1991), provides, in pertinent part:

> (1) A person commits the offense of theft when he purposely or knowingly obtains or exerts unauthorized control over property of the owner and:
> (a) has the purpose of depriving the owner of the property . . . .

We conclude that after viewing the evidence on Counts 1, 3, 4, 48 and 55 in the light most favorable to the prosecution, a rational trier of fact could find the essential elements of the crimes charged in each of these counts beyond a reasonable doubt. Accordingly, we affirm Richards' conviction on Counts 1, 3, 4, 48 and 55.

### Issue 2

Did the District Court err in denying Richards' motion to sever the economic counts from the deliberate homicide count?

Our inquiry into issues regarding joinder and severance is twofold. First, we must determine whether joinder of the offenses

6

in the information is proper. Second, we must determine whether severance of the offenses is necessary to prevent prejudice to the defendant.

The District Court determined that joinder was proper in this case under § 46-11-404, MCA, since the economic crimes establish the motive for the homicide and overlapping proof must be offered. Section 46-11-404, MCA, provides, in pertinent part:

> (1) Two or more offenses . . . may be charged in the same charging document in a separate count, or alternatively, if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same transactions connected together or constituting parts of a common scheme or plan. Allegations made in one count may be incorporated by reference in another count.

The State argues that the embezzlement from Richards Logging provided the motive for Richards to kill her husband. On the day he was killed, Jim Richards was reviewing the books for Richards Logging and was about to discover a $10,000 overdraft at the bank and numerous unauthorized checks written by Richards. The State maintains that Richards killed her husband to prevent him from discovering her embezzlement of funds from the company.

Joinder is proper where the offenses are logically linked by motive and where overlapping proof must be offered. State v. Baker (1989), 237 Mont. 140, 144, 773 P.2d 1194, 1197 (citing United States v. Hoelker (9th Cir. 1985), 765 F.2d 1422, 1425). Additionally, the State argues that the six economic crimes that were not part of the embezzlement from Richards Logging were "of the same or similar character" or "based on the same transactions connected together or constituting parts of a common scheme or

7

plan" as the other fifty-three economic counts.

After reviewing the record, we agree with the District Court that separate trials would require overlapping evidence and many of the same witnesses and that the economic crimes supplied the motive for the homicide and were therefore properly joined. Furthermore, joinder is proper in cases where the second charge, in this case the deliberate homicide, is precipitated by a previous charge, the economic crimes. State v. Bingman (1987), 229 Mont. 101, 109, 745 P.2d 342, 347.

Our second inquiry is whether the motion to sever should have been granted under § 46-13-211, MCA, because of prejudice to the defendant. Section 46-13-211, MCA, provides in pertinent part:

> (1) If it appears that a defendant or the prosecution is prejudiced by a joinder of charges or defendants in an indictment, information, or complaint or by a joinder for trial together, the court may order separate trials, grant a severance of defendants, or provide whatever other relief justice requires.

Prior to trial, Richards moved to sever the deliberate homicide count from the economic counts contending that joinder prejudiced her unfairly. She did not, however, separately move to sever the Richards Logging economic counts and the economic counts not involving Richards Logging; her motion simply encompassed all economic counts. The District Court determined that Richards had not made a sufficient showing of prejudice mandating severance and therefore denied her motion.

In determining whether to grant a motion to sever, the trial court must balance the possibility of prejudice to the defendant against the judicial economy which results from a joint trial.

8

State v. Campbell (1980), 189 Mont. 107, 120, 615 P.2d 190, 198. Judicial economy weighs heavily in the balancing process. Campbell, 615 P.2d at 198. In the past, this balancing process has been left to the sound discretion of the trial judge and absent an abuse of that discretion, we will not substitute our judgment for that of the trial court. Campbell, 615 P.2d at 198 (citing United States v. Cuesta (5th Cir. 1979), 597 F.2d 903, 919).

The burden of showing prejudice rests on the defendant. State v. Orsborn (1976), 170 Mont. 480, 489, 555 P.2d 509, 515. In showing prejudice, it is not sufficient that the defendant prove some prejudice or that a better chance of acquittal exists if separate trials are held. Campbell, 615 P.2d at 198; State v. Slice (1988), 231 Mont. 448, 451, 753 P.2d 1309, 1311. Rather, the defendant must show the prejudice was so great as to prevent a fair trial. Campbell, 615 P.2d at 198; Baker, 773 P.2d at 1198.

The factors that provide the basis for the predisposition for joint trials include the expeditious administration of justice, reduction of congestion in trial dockets, conservation of judicial time, reduction of burden on citizens who serve on juries in terms of time and money sacrificed, and avoidance of the necessity of recalling witnesses who otherwise would have to testify only once. Campbell, 615 P.2d at 198 (citing United States v. Brady (9th Cir. 1978), 579 F.2d 1121, 1128, cert. denied, 439 U.S. 1074, 99 S.Ct. 849, 59 L.Ed.2d 41).

We first addressed the issue of prejudice to a defendant from a joinder of charges in State v. Orsborn (1976), 170 Mont. 480, 555

9

P.2d 509. In Orsborn, we stated that there are three types of prejudice that may occur on consolidation of charges. First, prejudice may occur when the jury considers a person facing multiple charges to be a bad man and tends to accumulate evidence against him until it finds him guilty of something. Second, prejudice may occur when proof of guilt on the first count in an information is used to convict the defendant of a second count even though the proof would be inadmissible at a separate trial on the second count. The third kind of prejudice occurs when the defendant wishes to testify on his own behalf on one charge but not on another. Orsborn, 555 P.2d at 515.

The first type of prejudice, resulting from a defendant being held out to the jury as an habitual offender, is not alone sufficient to warrant severance. Orsborn, 555 P.2d at 515; Campbell, 615 P.2d at 198; Slice, 753 P.2d at 1311. As in the case before us on appeal, the defendant in Slice was charged with numerous economic crimes. In that case, the Court determined that the fact that the jury acquitted Slice on two of the counts indicated that they had considered the counts separately. Similarly, in the case before us, the jury acquitted Richards on nine counts after deliberating for four days. Richards has failed to show that the jury considered her a bad person because of the number of charges against her or that the jury accumulated evidence against her until finding her guilty of the charges.

The second type of prejudice is present when the jury uses proof of guilt on one count in an information to convict a

10

defendant on another count even though the proof would have been inadmissible at a separate trial on the second count. However, no prejudice of this nature will be found when the evidence presented at a joint trial is simple and distinct. Campbell, 615 P.2d at 199; Orsborn, 555 P.2d at 515.

Here, the State argues that the evidence on the deliberate homicide charge was sufficiently distinct in order to allow the jury to separate it from the evidence on the economic counts. Furthermore, the State argues that the jury was instructed that each count charged was a distinct offense and must be decided separately. The fact that the jury took four days to deliberate and acquitted Richards on nine counts shows that they did decide each count separately.

The third type of prejudice, where the defendant wishes to testify on one count and not on the others, only has merit if the offenses were "totally separate as to time, place and evidence." Orsborn, 555 P.2d at 515. Richards did not testify at trial, however, the State introduced into evidence several statements she gave to law enforcement officers where she talked about all of the crimes charged, including the homicide.

Richards has failed to show prejudice so great as to prevent a fair trial. Accordingly, we hold that the District Court did not err in denying Richards' motion to sever the economic counts from the deliberate homicide count.

Finally, Richards argues that the abuse of discretion standard for severance determinations has been subject to criticism.

11

Adopting the position of a leading commentator, Richards maintains that if the trial judge denies the defendant's severance motion for failure to demonstrate prejudice, experience dictates that it is virtually impossible to prevail on appeal. See, <u>Slice</u>, 753 P.2d at 1311. Richards contends that we should, instead, adopt the approach embodied in the ABA Criminal Justice Standard 13-3.1 and the Uniform Rules of Criminal Procedure, Rules 471(a) and 472, which provide substantially stricter standards for severance determinations. While we agree that Montana's present statutory scheme (which basically tracks Rules 8(a) and 14 of the Federal Rules of Criminal Procedure) reposes in the trial court a great deal of discretion in determining whether to grant a motion for severance; that our present statute places a difficult burden, indeed, on the accused; and that the ABA Standard and Uniform Rules provide a more cut-and-dried approach to this issue, Richards' arguments are more appropriately addressed to the legislature. Importantly, the record in this case fails to demonstrate that Richards was prejudiced by application of our current statutory scheme.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_William E. Hunt Sr_

_Troy Treweiler_

_____

_____
Justices

13

Justice W. William Leaphart, dissenting.

Although § 46-11-404, MCA, provides that different offenses may be joined in the same charging document if the offenses are "of the same or similar character, or are based on the same transactions connected together or constituting parts of a common scheme or plan," I firmly believe that requiring the defendant to go before a jury to defend one count of homicide and 59 counts of theft/forgery offends fundamental fairness. See State v. Thiel (1989), 236 Mont. 63, 66, 768 P.2d 343, 345. Whether there is merit to any of the numerous counts, human nature is such that the average juror is going to consider the fact that the defendant has been charged with 60 counts of criminal conduct and conclude, "where there's smoke there's fire." Although this Court has previously held that the "prejudice resulting from the jury believing the defendant to be a bad [woman] because of multiple charges - has seldom been found sufficient to warrant severance," State v. Campbell (1980), 189 Mont. 107, 121, 615 P.2d 190, 198 (citing State v. Orsborn (1976), 170 Mont. 480, 489, 555 P.2d 509, 514-15), I am of the opinion that the filing of 60 counts in order to convict on one count of homicide is beyond the pale.

Although I agree that it was necessary for the State to prove that Becky Richards had a motive to kill her husband by showing that she wanted to dispose of him before he discovered that she had been illegally depleting the Richards Logging checking accounts, I strongly reject the manner in which this evidence was presented.

14

I do not believe that it was necessary or appropriate for the State to prove motive through the filing of 59 different counts of property related offenses, including 6 counts that were totally unrelated to Richards Logging. The State could have achieved its purpose by consolidating the theft/forgery charges into a relatively small number of counts or, better yet, it should have simply charged Richards with homicide and presented the "other crimes" evidence under the strictures of Rule 404(b), M.R.Evid., or as *res gestae* evidence. Rule 404(b) is designed to accommodate "other crimes" evidence <u>if</u> such evidence meets certain requirements, one of which is that other crimes evidence, although relevant, may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice or needless presentation of cumulative evidence. State v. Matt (1991), 249 Mont. 136, 142, 814 P.2d 52, 56. By charging 59 separate property offenses, the State circumvented the *probative value versus potential prejudice* test of Rule 404(b) and put itself in a position to present exhaustive evidence related to 59 property offenses regardless of the fact that such an approach was highly prejudicial to the defendant. In other words, through abuse of its charging discretion, the State was able to do that which is clearly contrary to the spirit and letter of Rule 404(b); that is, paint the defendant as criminally disposed and of a bad character; an "avaricious, self-centered, scheming and compulsively dishonest woman . . . . "

By filing a 60-count charging document, the State was able to

15

engender a latent feeling of hostility towards the defendant. There is no doubt in my mind that when a defendant walks into a courtroom charged with 60 counts of criminal activity, the presumption of innocence goes out the back door. Given that the State's purpose in charging the property offenses was to prove defendant's motive for the homicide charge, the property offenses should have been handled as *res gestae* or "other crimes" under Rule 404(b). It was prosecutorial overreaching to thwart Rule 404(b) by charging each of these 59 events as a stand-alone offense. I dissent.

W. William Urquhart

Justice

16

November 22, 1995

CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

William Boggs
Attorney at Law
P.O. Box 7881
Missoula, MT 59807

Robert L. Deschamps, III
Missoula County Attorney
200 West Broadway
Missoula, MT 59802

Hon. Joseph P. Mazurek
Attorney General
Justice Building
Helena, MT 59620

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy