No. 97-705

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 51N

STATE OF MONTANA,

Plaintiff and Respondent,

v.

DONALD G. WHITTECAR,

Defendant and Appellant.

APPEAL FROM: District Court of the Fourth Judicial District,

In and for the County of Missoula,

The Honorable John S. Henson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

William Boggs, Attorney at Law, Missoula, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; John Paulson,

Assistant Attorney General; Helena, Montana

Fred Van Valkenburg, Missoula County Attorney, Missoula,

Montana

Submitted on Briefs: February 3, 2000

Decided: February 29, 2000

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Appellant Donald G. Whittecar (Whittecar) was charged with one count of felony theft and one count of felony theft, common scheme. Upon trial by jury, Whittecar was found guilty on both counts. Whittecar appeals from the judgment of conviction. We affirm.

¶3 Whittecar raises three issues on appeal:

¶4 1. Was Whittecar denied his right to effective assistance of counsel as the result of his attorney's conduct during voir dire?

¶5 2. Did the District Court properly deny Whittecar's motion to sever the two counts of theft?

¶6 3. Did the District Court properly deny Whittecar's motion to exclude other crimes evidence?

¶7 In September of 1994, Whittecar brought a wrecked Mercedes automobile to the Blue Ribbon Auto Body Shop in Missoula. Blue Ribbon gave Whittecar an estimate of about $2,600. Whittecar left the car with Blue Ribbon for about six months when he called and indicated that he had sufficient funds and that Blue Ribbon should go ahead with the repairs. Blue Ribbon completed the repairs and advised Whittecar that the car was ready in early May 1995 and that the bill came to $2,653. Whittecar gave Blue Ribbon $1,500 in cash and a check, post-dated a week in advance for May 16, 1995, for the balance of

$1,153. Blue Ribbon released the car to Whittecar. The check was subsequently returned from the bank marked "Account Closed." The Blue Ribbon office manager was advised by the bank that the account had been closed since April of 1995. Bank records indicated that the account was closed in April of 1995 with a negative balance.

¶8 The facts with regard to Count II of the Amended Information show that in late August of 1996, Whittecar bought an AM-FM tuner, an amplifier and two speakers from Fred Downing, Jr. in Missoula. Whittecar paid for the stereo system with a check dated September 3, 1996 in the amount of $289 and asked Downing to hold the check for a couple of weeks. Downing waited three weeks and then deposited the check. It was marked "Account Closed." The bank records indicated that the account had been closed in August 1996 and that the bank president had written to Whittecar on August 8, 1996, to inform him that the account was being closed and that any checks presented after August 16 would be returned "Account Closed."

## DISCUSSION

¶9 1. Was Whittecar denied his right to effective assistance of counsel as the result of his attorney's conduct during voir dire?

¶10 During the voir dire, the prosecutor asked the prospective jurors whether any of them had ever had experiences with bad checks. Six of the prospective jurors indicated that they had had experiences with bad checks in the course of their employment. After briefly discussing these experiences, the prosecutor twice asked whether any of these experiences would make it difficult for the panelists to maintain an open mind and give Whittecar a fair trial. The transcript shows that none of the panelists responded to these inquiries. Four of the six panelists having experience with bad checks were seated on Whittecar's trial jury.

¶11 Whittecar argues on appeal that his trial counsel was ineffective for failing to inquire of these jurors further and thereby develop challenges for cause. Whittecar asserts that "no such inquiry was made or attempted by counsel, who simply abrogated his participation in the voir dire proceedings." The record, however, belies this assertion. Rather, defense counsel, during his portion of the voir dire, asked whether any of the prospective jurors with bad check experience believed the experiences would impair their judgment and affect their ability to give Whittecar a fair trial. Defense counsel inquired further as to whether the panelists were willing to listen to the facts and to hear the entire case before

rendering a judgment, even if they had previous bad check experience. Again, no panelists expressed any reservations about their ability to sit and exercise impartial judgment.

¶12 Section 46-16-115(2)(j), MCA, allows a defendant to challenge a prospective juror for cause if the juror has a state of mind that would prevent the juror from acting with entire impartiality. The prospective juror becomes disqualified only when he or she has formed a fixed opinion on the guilt or innocence of the defendant and is unable to render a verdict based solely on the evidence presented at trial. *See* Great Falls Tribune v. District Court (1980), 186 Mont. 433, 439-40, 608 P.2d 116, 120.

¶13 Whittecar relies on our decision in State v. Chastain (1997), 285 Mont. 61, 947 P.2d 57, in arguing that defense counsel should have made further inquiry. In *Chastain*, we concluded that defense counsel's failure to take steps to prevent the presence on the jury of two jurors who may not have been able to fairly serve amounted to ineffective assistance of counsel. *Chastain*, 285 Mont. at 65-66, 947 P.2d at 60. In that case, two prospective jurors had expressed reservations about their ability to judge the child sexual assault case fairly. One of the panelists indicated strong feelings about an incident involving his little sister and said that his feelings could taint his judgment against the defendant. The other stated that accounts of such incidents evoke strong feelings in her which might impair her judgment. *Chastain*, 285 Mont. at 63-64, 947 P.2d at 59. This Court determined that counsel was ineffective for failing to make further inquiry as to whether the panelists could set aside their feelings and render a fair verdict. *Chastain*, 285 Mont. at 65, 947 P.2d at 60.

¶14 *Chastain* is clearly distinguishable. The record in the present matter reveals no grounds for disqualification and no reason to further inquire about the panelists' experiences with bad checks. Each of the individuals in question indicated an ability and willingness to render a verdict based solely on the evidence. No one expressed any opinion about Whittecar's guilt or innocence or any reservations about the presumption of innocence to which Whittecar was entitled. *Cf.* State v. DeVore, 1998 MT 340, 292 Mont. 325, 972 P.2d 816 (holding that district court abused its discretion in ignoring juror's statement that defendant must be guilty of something).

¶15 We conclude that Whittecar has failed to demonstrate that his attorney's performance during voir dire was deficient in any manner or that his defense was prejudiced by his attorney's acts or omissions.

¶16 Whittecar also contends that his counsel was ineffective for "doing nothing" when, during the early stages of voir dire, a prospective juror disclosed that he had a judgment against Whittecar. The State points out that the very purpose of voir dire is to uncover the existence of such matters so that interested jurors can be excused for cause. We note that that is precisely what occurred in this case. That is, upon hearing that the panelist had a judgment against Whittecar, the District Court immediately excused the juror without objection or comment from either side. We conclude that defense counsel was not ineffective for not taking some further, unspecified, action.

¶17 2. Did the District Court properly deny Whittecar's motion to sever the two counts of theft?

¶18 Whittecar concedes the joinder of counts one and two of the Amended Information was proper since the two counts are similar. However, he contends that the court abused its discretion in denying his motion to sever.

¶19 A defendant seeking severance under § 46-13-211(1), MCA, bears the burden of proving that joinder of the charges is prejudicial. It is not sufficient that he prove some prejudice or that he stands a better chance of acquittal if separate trials are held. State v. Richards (1995), 274 Mont. 180, 188, 906 P.2d 222, 227 (citation omitted). To satisfy his burden, the defendant must prove that the prejudice is so great as to prevent a fair trial. *Richards*, 274 Mont. at 188, 906 P.2d at 227 (citation omitted). "As a result of the defendant's burden of proof, the strong pressure in favor of joinder of charges exerted by considerations of judicial economy and the deference afforded trial courts, we seldom reverse a trial court's denial of a criminal defendant's motion to sever." State v. Martin (1996), 279 Mont. 185, 192, 926 P.2d 1380, 1385 (citation omitted).

¶20 Whittecar has not shouldered his burden of proving that the prejudice was so great as to prevent a fair trial. He alleges in conclusory fashion that the joinder prejudiced him in three ways: a person facing multiple charges may be considered to be a "bad man;" proof of guilt on one count may be used to convict on a second count even though the proof would be inadmissible at a separate trial on the second count; and other crimes evidence was used against Whittecar on Count II even though it had only been noticed by the State as to Count I. Finally, he asserts that there were no interests which were furthered by joinder since none of the transactions involved had any witnesses, exhibits or evidence in common and none were related in motive.

¶21 In State v. Martin, we concluded that Martin had not established that prejudice had occurred and that a "bald assertion" that the multiple charges and overlapping evidence invited the jury to convict him is insufficient to meet his burden of demonstrating prejudice. *Martin*, 279 Mont. at 192, 926 P.2d at 1385. In similar fashion, Whittecar's conclusory assertions that the two-count information caused the jury to consider him a "bad man," accumulate evidence against him on the two counts, and apply other crimes evidence from one count to the other are insufficient.

¶22 In addressing the question of severance, the District Court noted that Counts I and II were both premised upon Whittecar's obtaining services and goods by issuing checks on closed accounts. The court concluded that the allegations of the two counts showed an underlying scheme to defraud and were thus related and should be tried together. Whittecar has failed to show that the District Court abused its discretion in denying his motion to sever.

¶23 3. Did the District Court properly deny Whittecar's motion to exclude other crimes evidence?

¶24 In April of 1996, the State gave notice of intent to introduce evidence of other crimes pursuant to Rule 404(b), M.R.Evid. In particular, the State proposed to prove that in 1993, Whittecar, in connection with a car trade, tendered a post-dated check for $3,000 written on a closed account. With the help of law enforcement authorities, the matter was resolved when Whittecar returned the car and the bad check charge which had been filed against him was dismissed. In July 1996, the District Court, over Whittecar's objection, granted the State's motion to use this "other crimes" evidence.

¶25 In October 1996, the State filed an Amended Information adding Count II, a second count of felony theft, common scheme, again involving a post-dated check on a closed account. Whittecar concedes that the District Court was correct in concluding that the first three factors of the *Matt* four-part test were satisfied; that is, the evidence was similar to the transaction charged, it was not too remote in time, and it was relevant to prove absence of mistake or accident. State v. Matt (1991), 249 Mont. 136, 814 P.2d 52. However, Whittecar argues that once the court granted the State permission to amend the Information and add a second count of theft, the situation changed; the second count was, in effect, "other crimes" evidence, added to negate any attempt to show mistake or accident. Whittecar contends, "Once this count was added, any asserted need to prove the 1993 transaction evaporated, and at this point element four [is the probative value

outweighed by unfair prejudice] of the *Matt* test was clearly no longer satisfied."

¶26 Our review of the record indicates that Whittecar did not ask the District Court to reconsider its July 1996 ruling on the other crimes evidence after it allowed the State to amend the Information, three months later in October 1996. Thus the question of whether the addition of Count II vitiated any rationale for allowing the other crimes evidence in the first instance was never presented to the trial court. Accordingly, the issue may not be raised for the first time on appeal. *See* Hislop v. Cady (1993), 261 Mont. 243, 250, 862 P.2d 388, 392 (citation omitted).

¶27 The judgment of the District Court is affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER